CSD 1001A [11/15/04]

Name, Address, Telephone No. & I.D. No.

Kurt Ramlo (Bar No. CA 166856)
DLA PIPER LLP (US)
550 South Hope Street, Suite 2300
Los Angeles, CA  90071-2678
Tel:  213.330.7700 Fax: (213) 330-7701
Attorneys for NexPrise, Inc., Debtor and Debtor in Possession

Order Entered on
April 08, 2011
by Clerk U.S. Bankruptcy Court
Southern District of California

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

NexPrise, Inc.

Debtor.

BANKRUPTCY NO.  11-00742-LA11

Date of Hearing: April 7, 2011
Time of Hearing: 2:30 p.m.
Name of Judge: Hon. Louise D. Adler

## ORDER ON

**(A) The Sale Of Substantially All Of The Assets Of The Debtor Free And Clear Of All Claims, Liens, Liabilities, Rights, Interests And Encumbrances; (B) The Debtor To Enter Into And Perform Its Obligations Under The Asset Purchase Agreement; (C) The Debtor To Assume And Assign Certain Executory Contracts And Unexpired Leases; (D) Granting Related Relief**

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through  122   with exhibits, if any, for a total of  122   pages, is granted.  Motion/Application Docket Entry No.    16   

//

//

//

//

//

//

DATED:  April 07, 2011

Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under Fed. R. of Bankr. P. 9011 that the relief in the order is the relief granted by the court.

Submitted by:

DLA Piper LLP (US)
(Firm name)

By: /s/ Kurt Ramlo
Attorney for ☑ Movant ☐ Respondent

Approved as to form and content by:

    /s/ Michael D. Breslauer
Michael D. Breslauer
Solomon Ward Seidenwurm & Smith, LLP
Attorneys for The Official Creditors' Committee

CSD 1001A

1  Kurt Ramlo (Bar No. CA 166856)
   kurt.ramlo@dlapiper.com
2  Bertrand Pan (Bar No. CA 233472)
   bertrand.pan@dlapiper.com
3  Meredith Edelman (Bar No. CA 261602)
   meredith.edelman@dlapiper.com
4  **DLA PIPER LLP (US)**
   550 South Hope Street, Suite 2300
5  Los Angeles, CA  90071-2678
   Tel:  213.330.7700
6  Fax:  213.330.7701

7  Attorneys for NexPrise, Inc., Debtor and Debtor in
   Possession

8

9                    UNITED STATES BANKRUPTCY COURT

10                   SOUTHERN DISTRICT OF CALIFORNIA

11  In re:                              | Case No.  11-00742-LA11

12  NEXPRISE, INC., a Delaware corporation, | Chapter 11

13            Debtor and Debtor in       | **Order Authorizing (A) The Sale Of
14            Possession.               | Substantially All Of The Assets Of The Debtor
                                        | Free And Clear Of All Claims, Liens,
15                                      | Liabilities, Rights, Interests And
                                        | Encumbrances; (B) The Debtor To Enter Into
16  Tax ID # 77-0465496                 | And Perform Their Obligations Under The
                                        | Asset Purchase Agreement; (C) The Debtor
17                                      | To Assume And Assign Certain Executory
                                        | Contracts And Unexpired Leases;
18                                      | (D) Granting Related Relief**

19

20

21

22         Upon the motion (the "Motion")[1] of NexPrise, Inc., as a debtor and debtor in possession (the

23  "Debtor") for entry of an order (the "Order"), pursuant to Sections 105(a), 363 and 365 of title 11 of

24  _____
    [1]   All capitalized terms used but not defined herein shall have the meanings ascribed to them in the APA (as defined
25        herein) and the Motion, as applicable.

26

27

28

WEST\223263228.4

*Signed by Judge Louise DeCarl Adler April 07, 2011*

the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rule 6004 of the Local Rules of the United States Bankruptcy Court, Southern District of California (the "<u>Local Bankruptcy Rules</u>") authorizing and approving the following:

(a)    the sale of substantially all of Debtor's assets to Trubiquity, Inc. (the "<u>Purchaser</u>");

(b)    the entry into, performance under and terms and conditions of that certain Asset Purchase Agreement dated as of January 17, 2011 by and between the Debtor and Purchaser (collectively with all related agreements, amendments, documents or instruments and all exhibits, schedules and addenda to any of the foregoing, the "<u>APA</u>"), substantially in the form attached hereto as **<u>Exhibit A</u>**, as amended by the Court's Order On Bidding Procedures and Protections [Docket No. 73] whereby the Debtor has agreed to sell, and the Purchaser has agreed to buy, substantially all of the Debtor's assets (specifically as set forth and defined in the APA, the "<u>Purchased Assets</u>"), free and clear of all Claims (as defined below), Liens (defined below), liabilities, rights, interests and encumbrances except where the Debtor has agreed to transfer and Purchaser has expressly agreed to assume certain of the Debtor's liabilities (specifically as set forth and defined in the APA, the "<u>Assumed Liabilities</u>") (collectively, and including all actions taken or required to be taken in connection with the implementation and consummation of the APA, the "<u>Transactions</u>");

WEST\223263228.4

*Signed by Judge Louise DeCarl Adler April 07, 2011*

(c)    the assumption and assignment to Purchaser of certain executory contracts and unexpired leases of the Debtor designated for assumption and assignment in accordance with this Order, the Bidding Procedures Order (defined below) and the APA (collectively, with the executory contracts and unexpired leases set forth on **Exhibit B** attached hereto, the "Assumed Contracts"); and

(d)    other related relief;

and the Court having entered an order approving, among other things, the bidding procedures and the bid protections, including the expense reimbursement amount, and granting certain related relief on March 3, 2011 [Docket No. 73] (the "Bidding Procedures Order"); and no other Qualified Bids in accordance with the Bidding Procedures Order having been received and therefore no auction having been conducted in accordance with the Bidding Procedures Order (the "Auction"); and Purchaser having submitted the highest or otherwise best offer; and the Court having conducted a hearing on the Motion commencing on April 7, 2011 (the "Sale Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion, the APA, the Bidding Procedures Order, the record of the hearing before the Court on February 24, 2011 (the "Bidding Procedures Hearing") at which the Bidding Procedures Order was approved and all objections to the Transactions and the APA filed in accordance with the Bidding Procedures Order; and the appearance of all interested parties and all responses and objections to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and having heard statements of counsel and the evidence presented in support of the relief requested in the Motion at the Sale Hearing; and upon all

3

of the proceedings had before the Court, and any objections and responses to the relief requested in the Motion having been heard and overruled, continued or resolved in their entirety, and it appearing that due notice of the Motion, the APA, the Bidding Procedures Order and the Auction having been provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, its stakeholders and all other parties in interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT EXPRESSLY FINDS AS FOLLOWS:**

<u>**Jurisdiction, Venue and Final Order**</u>

A.      This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

<u>**Notice of the Transactions, APA, Sale Hearing, Auction and the Cure Amounts**</u>

B.      As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate and sufficient notice of the Motion, the Auction, the Sale Hearing, the APA and the Transactions have been provided in accordance with Sections 363 and 365 of the Bankruptcy Code , Bankruptcy Rules 2002, 6004 and 6006, Rule 6004 of the Local Bankruptcy Rules and the Guidelines for the Sale of Substantially All Assets Under §363 Within 60 Days of the Filing of the Petition under the Local Bankruptcy Rules.  The Debtor has complied with all obligations to provide notice of the Motion, the Auction, the Sale Hearing, the APA and the Transactions as required by the Bidding Procedures Order.  The aforementioned notices are good, sufficient and appropriate under

WEST\223263228.4

*Signed by Judge Louise DeCarl Adler April 07, 2011*

the circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing, the APA or the Transactions is required for the entry of this Order.

C.      A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

D.      In accordance with the Bidding Procedures Order, the Debtor has served a notice (as amended, modified or otherwise supplemented from time to time, the "Contract Notice") of the potential assumption and assignment of the Assumed Contracts and of the proposed cure amounts (each, a "Cure Amount" and, collectively, the "Cure Amounts") upon each non-Debtor counterparty to an Assumed Contract.  The service and provision of the Contract Notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of the assumption and assignment of the Assumed Contracts or establishing a Cure Amount for the respective Assumed Contracts.  Non-Debtor counterparties to the Assumed Contracts have had an adequate opportunity to object to assumption and assignment of the applicable Assumed Contracts and the Cure Amount set forth in the Contract Notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, Purchaser for purposes of Section 365(c)(1) of the Bankruptcy Code).  The deadline to file an objection to the assumption and assignment to the Purchaser of any Assumed Contract (a "Contract Objection") has expired and to the extent any such party timely filed a Contract Objection, all such Contract Objections have been resolved, withdrawn, overruled or continued to a later hearing by agreement of the parties.  To the extent that any such party did not timely file a Contract Objection by the Contract Objection

5

WEST\223263228.4

deadline, such party shall be deemed to have consented to (i) the assumption and assignment of the Assumed Contract and (ii) the Cure Amount set forth on the Contract Notice.

### Highest or Otherwise Best Offer

E.    As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtor has otherwise complied in all respects with, the Bidding Procedures Order.  The Auction was duly noticed and the Auction process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase all of the Purchased Assets and assume all of the Assumed Liabilities.

F.    The Purchased Assets were adequately marketed by the Debtor, and the consideration provided by Purchaser under the APA constitutes the highest or otherwise best offer and provides fair and reasonable consideration to the Debtor for the sale of all Purchased Assets and the assumption of all Assumed Liabilities.

G.    Approval of the Motion and the APA and the consummation of the Transactions contemplated thereby are in the best interests of the Debtor, its creditors, estate and other parties in interest.  The Debtor has demonstrated good, sufficient and sound business reasons and justifications for entering into the Transactions and the performance of its obligations under the APA.

H.    Entry of an order approving the APA and all the provisions thereof is a necessary condition precedent to Purchaser's consummation of the Transactions.

I.    The APA was not entered into, and neither the Debtor nor Purchaser, have entered into the APA or proposing to consummate the Transactions, for the purpose of hindering, delaying or defrauding the Debtor's present or future creditors.  Neither the Debtor nor Purchaser is entering

6

into the APA, or proposing to consummate the Transactions, fraudulently, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

J.      The offer of Purchaser, upon the terms and conditions set forth in the APA, including the form and total consideration to be realized by the Debtor pursuant to the APA:  (i) is the highest and/or otherwise best offer received by the Debtor; (ii) is fair and reasonable; (iii) is in the best interests of the Debtor's creditors and estates and (iv) constitutes fair value, fair, full and adequate consideration, reasonably equivalent value and reasonable market value for the Purchased Assets.

K.      The Purchaser is the Winning Bidder for the Purchased Assets in accordance with the Bidding Procedures Order.  The Purchaser has complied in all respects with the Bidding Procedures Order and any other applicable order of this Court in negotiating and entering into the APA and the Transactions, and the APA complies with the Bidding Procedures Order and any other applicable order of this Court.

**Good Faith of Debtor and Purchaser**

L.      The sales process conducted by the Debtor, including without limitation, the Bidding Procedures set forth in the Bidding Procedures Order, was at arm's length, non-collusive, in good faith and substantively and procedurally fair to all parties.

M.      The Debtor and its professionals have complied, in good faith, in all respects with the Bidding Procedures Order.  As demonstrated by (i) any testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale

7

Hearing, substantial marketing efforts and a competitive sale process were conducted in accordance with the Bidding Procedures Order, the Debtor (a) afforded interested potential purchases a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase all of the Debtor's assets, (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets and (c) considered any bids submitted on or before the Bid Deadline.

N.      The APA and the Transactions contemplated thereunder were proposed, negotiated and entered into by and among the Debtor and Purchaser without collusion, in good faith and at arm's length.  Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the APA or the Transactions to be avoided under Section 363(n) of the Bankruptcy Code.

O.      Neither the Purchaser nor any of its respective affiliates, present or contemplated members, officers, directors, shareholders or any of their respective successors and assigns is an "insider" of the Debtor, as that term is defined in Section 101(31) of the Bankruptcy Code. Purchaser is entering into the Transactions in good faith and is a good-faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding.  Neither the Debtor nor the Purchaser have engaged in any action or inaction that would cause or permit the APA to be avoided or impose any costs or damages under Section 363(n) of the Bankruptcy Code.

<u>**Section 363 is Satisfied**</u>

P.      The Debtor has demonstrated a sufficient basis and compelling circumstances requiring it to (i) enter into the APA and (ii) sell the Purchased Assets and assume and assign the

8

*Signed by Judge Louise DeCarl Adler April 07, 2011*

Assumed Contracts, and such actions are appropriate exercises of the Debtor's business judgment and in the best interests of the Debtor, its estate and its creditors. Such business reasons include, but are not limited to, the fact that (i) the APA constitutes the highest or otherwise best offer for the Purchased Assets; (ii) the APA presents the best opportunity to realize the value of the Debtor on a going concern basis and avoid any potential decline and devaluation of the Debtor's business; and (iii) unless the sale is concluded expeditiously as provided for in the Motion and pursuant to the APA, recoveries of creditors may be diminished.

Q. The Debtor has, to the extent necessary, satisfied the requirements of Bankruptcy Code section 363(b)(1). Accordingly, appointment of a consumer privacy ombudsman pursuant to Bankruptcy Code sections 363(b)(1) or 332 is not required with respect to the relief requested in the Motion.

R. The Purchased Assets constitute property of the Debtor's estate and title thereto is presently vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code.

S. The sale of the Purchased Assets to Purchaser under the terms of the APA meets the applicable provisions of Section 363(f) of the Bankruptcy Code such that the sale of the Purchased Assets will be free and clear of any and all claims, and except as expressly provided in the APA with respect to the Assumed Liabilities, the (i) transfer of the Purchased Assets to Purchaser and (ii) assumption and/or assignment to Purchaser of the Assumed Contracts and Assumed Liabilities will be free and clear of all claims and will not subject the Purchaser or any of the Purchaser's assets to any liability for any claims whatsoever (including, without limitation, under any theory of equitable law, antitrust, or successor or transferee liability). All holders of claims who did not object, or withdrew their objections to the Transactions, are deemed to have consented to the Transactions

9

pursuant to Section 363(f)(2) of the Bankruptcy Code, and all holders of claims are adequately protected — thus satisfying Section 363(e) of the Bankruptcy Code — by having their claims, if any, attach to the proceeds of the Transactions ultimately attributable to the property against or in which they assert a claim or other specifically dedicated funds, in the same order of priority and with the same validity, force and effect that such claim holder had prior to the Transactions, subject to any rights, claims and defenses of the Debtor or its estate, as applicable, or as otherwise provided herein.

T.     Purchaser would not have entered into the APA and would not consummate the sale of the Purchased Assets, thus adversely affecting the Debtor, its estate, creditors, employees and other parties in interest, if the sale of the Purchased Assets was not free and clear of all Claims (defined below) or if the Purchaser could be liable for any claims, including, without limitation and as applicable, certain liabilities that expressly are not assumed by Purchaser as set forth in the APA or in this Order.  Purchaser asserts that it will not consummate the Transactions unless the APA specifically provides and this Court specifically orders that none of the Purchaser, its assets or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any (i) claim or (ii) successor or transferee liability for the Debtor other than with respect to the Assumed Liabilities.

U.     The transfer of the Purchased Assets to Purchaser under the APA will be a legal, valid and effective transfer of all of the legal, equitable and beneficial right, title and interest in and to the Purchased Assets free and clear of all claims.  The Debtor may sell its interests in the Purchased Assets free and clear of all claims because, in each case, one or more of the standards set forth in

WEST\223263228.4

Section 363(f) has been satisfied.  The transfer of the Purchased Assets to Purchaser will vest Purchaser with good and marketable title to the Purchased Assets.

V.    The Purchaser is not a continuation of the Debtor or its estate and there is no continuity between Purchaser and the Debtor.  Purchaser is not holding itself out to the public as a continuation of the Debtor or its estate and the Transactions do not amount to a consolidation, merger or *de facto* merger of Purchaser and the Debtor.

### Assumption and Assignment of the Assumed Contracts

W.    The assumption and assignment of the Assumed Contracts (as such Assumed Contracts may be amended, supplemented or otherwise modified prior to assumption and assignment without further order of the Court with the consent of the Debtor, the contract counterparty and the Purchaser) that are designated for assumption and assignment pursuant to the terms of this Order and the APA are integral to the APA, are in the best interests of the Debtor and its estate, creditors and other parties in interest, and represent the reasonable exercise of sound and prudent business judgment by the Debtor.

X.    No section of any Assumed Contract which purports to prohibit, restrict or condition the use, consideration or assignment of any such Assumed Contract in connection with the Transactions shall have any force or effect.

Y.    The Debtor has met all requirements of Section 365(b) of the Bankruptcy Code for each of the Assumed Contracts.  The Debtor and/or Purchaser, as applicable under the APA, have (i) cured and/or provided adequate assurance of cure of any default existing prior to the Closing under all of the Assumed Contracts, within the meaning of Section 365(b)(1)(A) of the Bankruptcy Code; and (ii) provided compensation or adequate assurance of compensation to any counterparty

11

WEST\223263228.4

*Signed by Judge Louise DeCarl Adler April 07, 2011*

for actual pecuniary loss to such party resulting from a default prior to the Closing under any of the Assumed Contracts, within the meaning of Section 365(b)(1)(B) of the Bankruptcy Code.  Each of the Assumed Contracts is free and clear of all Claims against Purchaser.

Z.    Purchaser has demonstrated adequate assurance of its future performance under the relevant Assumed Contracts within the meaning of Sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  Pursuant to Section 365(f) of the Bankruptcy Code, the Assumed Contracts to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, Purchaser notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

AA.    No defaults exist in the Debtor's performance under the Assumed Contracts as of the date of this Order other than the failure to pay amounts equal to the Cure Amounts or defaults that are not required to be cured as contemplated in Section 365(b)(1)(A) of the Bankruptcy Code.

BB.    There is no legal or equitable reason to delay the Transactions.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

**General Provisions**

1.    The Motion is granted in its entirety and approved in all respects.

2.    All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing and all reservations of rights included therein, are hereby overruled on the merits with prejudice.  All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein including, without limitation, all non-Debtor parties to the Assumed Contracts.

12

WEST\223263228.4

*Signed by Judge Louise DeCarl Adler April 07, 2011*

3.      The findings of fact and the conclusions of law set forth herein shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014.  To the extent any of the following constitute findings of fact or conclusions of law, they are adopted as such.  To the extent any of the prior findings of fact or conclusions of law constitutes an order of this Court, they are adopted as such.

### Approval of the APA

4.      The APA, all of the terms and conditions thereof, and all of the Transactions contemplated therein are approved in all respects. The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety. The transfer of the Purchased Assets by the Debtor to Purchaser shall be a legal, valid and effective transfer of the Purchased Assets. The consummation of the Transactions is hereby approved and authorized under Section 363(b) of the Bankruptcy Code.

5.      The Debtor is authorized and, to the extent not already done, directed to (a) take any and all actions necessary or appropriate to perform, consummate, implement and close the Transactions, including the sale to Purchaser of all Purchased Assets, in accordance with the terms and conditions set forth in the APA and this Order, including, without limitation, executing, acknowledging and delivering such corporate name change certificates, deeds, assignments, conveyances and other assurance, documents and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying and confirming to Purchaser, or reducing to possession, any or all of the Purchased Assets and (b) to assume and assign any and all Assumed Contracts to the Purchaser.  The Debtor is further authorized to pay, whether before, at or after the

13

Closing, any expenses or costs that are required to be paid in order to consummate the Transactions or perform their obligations under the APA.

6.    All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtor to transfer the Purchased Assets to Purchaser in accordance with the APA and this Order.

7.    All amounts, if any, to be paid by Debtor to Purchaser pursuant to the APA, including, without limitation, any allowed claims for breach thereof shall (a) constitute allowed administrative expenses of the estates pursuant to Sections 503(b) and 507(a)(2) of the Bankruptcy Code, (b) be protected as provided in the APA, (c) not be altered, amended, discharged or affected by any chapter 11 plan proposed or confirmed in these cases without the prior written consent of Purchaser and (d) be due and payable if and when any Debtor's obligations arise under the APA without further order of the Court.

8.    Nothing contained in any chapter 11 plan confirmed in these chapter 11 cases or the order confirming any such chapter 11 plan shall conflict with or derogate from the provisions of the APA or this Order, and, to the extent of any conflict or derogation between this Order or the APA and such future chapter 11 plan or order, the terms of this Order and the APA shall control.

### Sale and Transfer Free and Clear of Claims

9.    Except as otherwise expressly provided in the APA and the terms of this Order with respect to Assumed Liabilities, the Purchased Assets shall be sold free and clear of all claims, liens, liabilities, interests, rights and encumbrances, including, without limitation, the following:    all mortgages, restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income or other exercise of any attributes of ownership),

14

hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments; demands, rights of first refusal, consent rights, offsets, contract rights, recoupment rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims, environmental rights and claims (including, without limitation, toxic tort claims), labor rights and claims, employment rights and claims, pension rights and claims, tax claims, regulatory violations by any governmental entity, decrees of any court or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, obligation claims, demands, guaranties, option rights or claims, rights, contractual or other commitment rights and claims, and all other matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these chapter 11 cases (but, for the avoidance of doubt, in each case prior to the Closing), and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law or doctrine of successor liability (all of the foregoing collectively being referred to in this Order as "**Claims**", and, as used in this Order such term includes, without limitation, any and all "claims" as that term is defined and used in the Bankruptcy Code, including section 101(5) thereof) with all such Claims to attach to the consideration to be received by the Debtor with the same validity, force, priority and effect which they now have as against the Purchased Assets and subject

15

to any claims and defenses the Debtor or other parties may possess with respect thereto.  As used in this Order, the term "**Liens**" includes, without limitation, any statutory lien on real and personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof.

10.     At Closing, all of the Debtor's right, title and interest in and to, and possession of, the Purchased Assets shall be immediately vested in Purchaser pursuant to Sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code free and clear of any and all Claims except for Assumed Liabilities.  Such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets.  All persons or entities, presently or on or after the Closing, in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to Purchaser or its respective designees on the Closing or at such time thereafter as Purchaser may request.

11.     This Order (a) shall be effective as a determination that, as of the Closing, (i) no Claims (other than Assumed Liabilities) will be capable of being asserted against the Purchaser or any of its respective assets (including the Purchased Assets), (ii) the Purchased Assets shall have been transferred to Purchaser free and clear of all Claims and (iii) the conveyances described herein have been effected; and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any

16

documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.  The Purchased Assets are sold free and clear of any reclamation rights.

12.    Except as otherwise expressly provided in the APA with respect to the Assumed Liabilities, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants and other creditors holding Claims arising under or out of, in connection with, or in any way relating to, the Debtor, the Purchased Assets, the ownership, sale or operation of the Purchased Assets and the business prior to Closing or the transfer of the Purchased Assets to Purchaser, are hereby forever barred, estopped and permanently enjoined from asserting such Claims against the Purchaser, its property or the Purchased Assets.  Following the Closing, no holder of any Claim shall interfere with Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to any such Claim, or based on any action the Debtor may take in its chapter 11 cases.

13.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Claims against or in the Purchased Assets shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Claims that the person or entity has with respect to the Purchased Assets or otherwise, then only with regard to the Purchased Assets that are purchased by Purchaser pursuant to the APA and this Order (a) the Debtor is hereby authorized and directed to execute and file such statements,

17

instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets and (b) Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims against the Purchaser and the applicable Purchased Assets; and (c) the Purchaser may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all Claims with respect to the Purchased Assets other than Assumed Liabilities.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office.

14.     To the maximum extent permitted under applicable law, Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtor with respect to the Purchased Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to Purchaser as of the Closing Date.

15.     To the extent permitted by Bankruptcy Code section 525, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred, assigned or conveyed to Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Transactions.

16.     For the avoidance of doubt, only Purchased Assets that are part of the Debtor's estate are being sold to Purchaser free and clear of Claims pursuant to Section 363(f) of the Bankruptcy Code.

18

**<u>No Successor or Transferee Liability</u>**

17.    Except as expressly provided in the APA with respect to Assumed Liabilities, the Purchaser shall not be deemed, as a result of any action taken in connection with the APA, the consummation of the Transactions contemplated by the APA, or the transfer or operation of the Purchased Assets to (a) be a legal successor, or otherwise be deemed a successor to the Debtor (other than, for Purchaser, with respect to any obligations as an assignee under the Assumed Contracts arising after the Closing); (b) have, *de facto* or otherwise, merged with or into the Debtor; or (c) be an alter ego or a mere continuation or substantial continuation of the Debtor including, without limitation, within the meaning of any foreign, federal, state or local revenue, pension, ERISA, the Consolidated Omnibus Budget Reconciliation Act ("<u>COBRA</u>"), WARN Act (29 U.S.C. §§ 2101 et seq.) ("<u>WARN</u>"), Comprehensive Environmental Response Compensation and Liability Act ("<u>CERCLA</u>"), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the NLRA, environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, any liabilities, debts or obligations of or required to be paid by the Debtor for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine.

19

*Signed by Judge Louise DeCarl Adler April 07, 2011*

18.     Other than as expressly set forth in the APA with respect to Assumed Liabilities, the Purchaser shall not have any responsibility for (a) any liability or other obligation of the Debtor or related to the Purchased Assets or (b) any remaining Claims against the Debtor or any of its predecessors or affiliates.  Except as expressly provided in the APA with respect to Assumed Liabilities, the Purchaser shall have no liability whatsoever with respect to the Debtor's (or its predecessors' or affiliates') respective businesses or operations or any of the Debtor's (or its predecessors' or affiliates') obligations (as described herein, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing.  Except to the extent expressly included in the Assumed Liabilities with respect to Purchaser, the Purchaser shall have no liability or obligation under the WARN or CERCLA, or any foreign, federal, state or local labor, employment, or environmental law whether of similar import or otherwise by virtue of Purchaser's purchase of the Purchased Assets or assumption of the Assumed Liabilities by Purchaser or an Affiliate of Purchaser.

19.     Except as expressly provided in the APA for the Assumed Liabilities, with respect to Purchaser, nothing in this Order or the APA shall require the Purchaser to (a) continue or maintain in effect, or assume any liability in respect of any employee, collective bargaining agreement, pension,

20

welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtor is a party or have any responsibility therefor including, without limitation, medical, welfare and pension benefits payable after retirement or other termination of employment; or (b) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

20.    Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, or its assets (including the Purchased Assets), with respect to any (a) Claim or (b) Successor or Transferee Liability including, without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien, claim, interest or encumbrance; (iv) asserting any setoff, right of subrogation or recoupment of any kind; (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with such assets.

WEST\223263228.4

**Good Faith of Purchaser**

21.    The Transactions contemplated by the APA are undertaken by Purchaser without collusion and in good faith, as that term is defined in Section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the Transactions (including the assumption and assignment of the Assumed Contracts), unless such authorization and consummation of such sale are duly and properly stayed pending such appeal.

22.    Neither the Debtor nor Purchaser have engaged in any action or inaction that would cause or permit the Transactions to be avoided or costs or damages to be imposed under Section 363(n) of the Bankruptcy Code.  The consideration provided by Purchaser for the Purchased Assets under the APA is fair and reasonable and the sale may not be avoided under Section 363(n) of the Bankruptcy Code.

**Assumption and Assignment of Assumed Contracts**

23.    The Debtor is authorized and directed at the Closing to assume and assign each of the Assumed Contracts.  The payment of the applicable Cure Amounts shall (a) effect a cure of all defaults existing thereunder as of the Closing, (b) compensate for any actual pecuniary loss to such non-Debtor counterparty resulting from such default and (c) together with the assumption of the Assumed Contracts by the Debtor and the assignment of the Assumed Contracts to Purchaser, constitute adequate assurance of future performance thereof.

24.    Any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the counterparty to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the

22

WEST\223263228.4

*Signed by Judge Louise DeCarl Adler April 07, 2011*

assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.  All other requirements and conditions under Sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to Purchaser or an Affiliate of Purchaser of the Assumed Contracts have been satisfied.   Upon the Closing, in accordance with Sections 363 and 365 of the Bankruptcy Code, Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtor under the Assumed Contracts, and such Assumed Contracts shall remain in full force and effect for the benefit of Purchaser.  Each non-Debtor counterparty to the Assumed Contracts shall be forever barred, estopped and permanently enjoined from (a) asserting against the Debtor or Purchaser or their respective property any assignment fee, acceleration, default, breach or claim or pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing or arising by reason of the Closing, including any breach related to or arising out of change-in-control in such Assumed Contracts, or any purported written or oral modification to the Assumed Contracts and (b) asserting against Purchaser (or its property, including the Purchased Assets) any claim, counterclaim, defense, breach, condition, setoff asserted or capable of being asserted against the Debtor existing as of the Closing or arising by reason of the Closing except for the Assumed Liabilities.

25.    In the case of licenses, certificates, approvals, authorization, leases, contracts, agreements and other commitments include in the Purchased Assets that (a) cannot be transferred or assigned effectively without the consent of third parties, which consent has not been obtained prior to Closing, the Debtor shall, subject to any approval of the Bankruptcy Court that may be required, reasonably cooperate with Purchaser in endeavoring to obtain such consent and, if any such consent is not obtained, the Debtor shall, following Closing, and subject to any approval of the Bankruptcy

23

Court that may be required, cooperate with Purchaser in all reasonable respects to provide to Purchaser the benefits thereof in some other manner or (b) that are otherwise not transferable or assignable, the Debtor shall, following Closing, and subject to any approval of the Bankruptcy Court that may be required, reasonably cooperate with Purchaser to provide to Purchaser the benefits thereof in some other manner (including the exercise of the rights of the Debtor thereunder).

26. Upon the Closing and the payment of the relevant Cure Amounts by Debtor or Purchaser as set forth in the APA, Purchaser shall be deemed to be substituted for the Debtor as a party to the applicable Assumed Contracts and the Debtor shall be released, pursuant to Section 365(k) of the Bankruptcy Code, from any liability under the Assumed Contracts. There shall be no rent accelerations, assignment fees, increases or any other fees charged to Purchaser or the Debtor as a result of the assumption and assignment of the Assumed Contracts.

27. Each non-Debtor party to an Assumed Contract is forever barred, estopped and permanently enjoined from asserting against Purchaser, or its property (including without limitation the Purchased Assets), any default existing as of the date of the Sale Hearing, or any counterclaim, defense, setoff or other claim asserted or capable of being asserted against the Debtor.

28. Other than the Assumed Contracts, Purchaser assumed none of the Debtor's other contracts and leases and shall have no liability whatsoever thereunder.

29. The assignments of each of the Assumed Contracts are made in good faith under Sections 363(b) and (m) of the Bankruptcy Code.

**Modifications to APA**

30. The definition of "Avoidance Action Release" is deleted from Section 1.1 of the APA.

24

31.     Section 2.1(h) of the APA is hereby amended and restated as follows:  "all of Seller's rights, claims, credits, causes of action or rights of set off against third parties, including rights under vendors' and manufacturers' warranties, indemnities, guaranties, and causes of action under applicable state Law, other than solely with respect to Excluded Assets;"

32.     Section 2.2(h) is hereby amended and restated as follows:  "all Avoidance Actions;"

33.     Section 2.4(i) of the APA is hereby amended and restated as follows:  "all Transfer Taxes (as defined in section 10.1 of the APA) imposed in connection with the transactions contemplated hereby that are not the Purchaser's share in accordance with section 10.1 hereof."

34.     Section 2.4(f) of the APA is hereby amended and restated as follows:  "all Liabilities relating to accounts payable of Seller (including those incurred in the Ordinary Course of Business (including, for the avoidance of doubt, (i) invoiced accounts payable and (ii) accrued but uninvoiced accounts payable)) ("Trade Payables")."

35.     Section 2.5(b) of the APA is deleted in its entirety.

36.     Schedule 2.5(b) of the APA is deleted in its entirety.

37.     Section 3.2 of the APA is hereby amended and restated as follows:  "The aggregate consideration for the Purchased Assets shall be (a) an amount in cash equal to (the "Purchase Price") (i) two million dollars ($2,000,000) minus (ii) an amount equal to the Cure Amount Reduction, minus (iii) the Closing Date Deferred Revenue Excess Amount and (b) the assumption of the Assumed Liabilities."

38.     Section 7.1(j)(ii) of the APA is hereby amended to add the following words to the end of the sentence:  "except to the extent there is an unresolved objection to the Assumption and

25

Assignment of a particular Purchased Contract that is an Additional Assumed Contract under the Bidding Procedures Order."

39.    Section 7.1(j)(iii) of the APA is hereby amended to add the following words to the end of the sentence:  "except to the extent there is an unresolved objection to the Cure Amount of a particular Purchased Contract that is an Additional Assumed Contract under the Bidding Procedures Order."

40.    Section 7.1(xiv) is deleted in its entirety.

41.    Section 8.8 of the APA is hereby amended to add the following sentence at the end of the first paragraph: "At the request of Seller, Purchaser shall promptly comply with any reasonable request for information relating to the administration of the Debtor's bankruptcy estate."

42.    The APA is hereby amended to add the following provision as section 11.14 of the APA:  "Attorney Fees. In any litigation, arbitration, or other proceeding by which one party to the APA either seeks to interpret, construe, or enforce its rights or remedies under this APA (whether in contract, tort, or both) or seeks a declaration of any rights or obligations under this APA, the prevailing party shall be awarded its reasonable attorneys' fees, and costs and expenses incurred in accordance with applicable law."

### Other Provisions

43.    Notwithstanding anything to the contrary in the Motion, if the APA is terminated prior to Closing and the Purchaser is entitled to the Expense Reimbursement Amount pursuant to the APA or the Bidding Procedures Order, then, (i) the Debtor shall promptly return the Purchaser's Deposit (if any) and (ii) the Debtor also shall be obligated to pay to Purchaser any portion of the Expense Reimbursement Amount owed to Purchaser pursuant to the APA in immediately available

26

WEST\223263228.4

funds within five (5) business days of receipt of a notice of termination of the APA; provided, however, that, pending such payment, the Expense Reimbursement Amount shall constitute, and Purchaser shall have, an allowed super priority administrative expense claim for the amount of the Expense Reimbursement Amount pursuant to Bankruptcy Code sections 503(a) and (b) and 507(a)(2)..

44.    As soon as practicable after Closing, the Debtor shall effectuate a name change to change the name of Debtor to NP Liquidating Inc.  Upon a filing by the Debtor of a notice that Closing has occurred, the Clerk of the Bankruptcy Court is directed to change the name of the Debtor on the docket of this chapter 11 case to NP Liquidating Inc. and revise the caption of this chapter 11 case to the following:

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Chapter 11 |
| NP LIQUIDATING INC., a Delaware corporation | Case No. 11-00742-LA11 |
| Debtor and Debtor in Possession. | |

45.    Purchaser is not and will not become obligated to pay any fee or commission or like payment to any broker, finder or financial advisor as a result of the consummation of the transaction contemplated by the APA based upon any arrangement made by or on behalf of the Debtor.

27

WEST\223263228.4

46.     This Order is binding upon and inures to the benefit of any successors and assigns of the Debtor or Purchaser, including any trustee appointed in any subsequent case of the Debtor under chapter 7 of the Bankruptcy Code.

47.     The provisions of this Order and the APA are non-severable and mutually dependent.

48.     The APA may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

49.     Nothing in this Order, the APA or any asset purchase agreement releases, nullifies, precludes or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property from and after the Closing.   Nothing in this Order, the APA or any asset purchase agreement authorizes the transfer to the Purchaser of any licenses, permits, registrations or governmental authorizations and approvals that would require government approval prior to such transfer without the Purchaser's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers.

50.     The Court shall retain exclusive jurisdiction to, among other things, interpret, implement and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the sale.  This Court retains jurisdiction to compel delivery of the Purchased Assets, to protect the Purchaser and its

28

*Signed by Judge Louise DeCarl Adler April 07, 2011*

assets, including the Purchased Assets, against any Claims and Successor and Transferee Liability and to enter orders, as appropriate, to transfer the Purchased Assets and the Assumed Contracts to Purchaser.

51.     Notwithstanding the possible applicability of Rules 6004(h), 6006(d), 7062 and 9014 of the Bankruptcy Rules or otherwise, the terms and conditions of this Order shall be effective immediately upon entry and the Debtor and Purchaser are authorized to close the sale immediately upon entry of this Order.

52.     To the extent any provisions of this Order conflict with, or are otherwise inconsistent with, the terms and conditions of the APA or the Bidding Procedures Order, this Order shall govern and control, and to the extent the Motion conflicts with, or is otherwise inconsistent with, the terms and conditions of the APA, the terms and conditions of the APA shall govern and control.

# # #

29

*Signed by Judge Louise DeCarl Adler April 07, 2011*

# EXHIBIT A

EXECUTION COPY

ASSET PURCHASE AGREEMENT

BY AND BETWEEN

NEXPRISE INC.,

AND

TRUBIQUITY, INC.


Dated as of January 17, 2011

WEST\222880288.10
353507-900000

Confidential

# TABLE OF CONTENTS

Page

**ARTICLE I DEFINITIONS** ...............................................................................1
    1.1    Certain Definitions.................................................................1
    1.2    Other Definitional and Interpretive Matters .........................11

**ARTICLE II PURCHASE AND SALE OF ASSETS; ASSUMPTION OF LIABILITIES**............................................................................................12
    2.1    Purchase and Sale of Assets..................................................12
    2.2    Excluded Assets ....................................................................14
    2.3    Assumption of Liabilities......................................................15
    2.4    Excluded Liabilities ..............................................................15
    2.5    Cure Amounts and Trade Payables .......................................17
    2.6    Further Conveyances and Assumptions.................................18

**ARTICLE III CONSIDERATION; CONDITIONS TO CLOSING** .....................18
    3.1    Determination of Consideration............................................18
    3.2    Consideration ........................................................................18
    3.3    Payment of Purchase Price....................................................19
    3.4    Conditions Precedent to Obligations of Purchaser ...............19
    3.5    Conditions Precedent to Obligations of Seller ......................20
    3.6    Conditions Precedent to Obligations of Purchaser and Seller .............20
    3.7    Frustration of Closing Conditions.........................................21

**ARTICLE IV CLOSING AND TERMINATION** ..........................................21
    4.1    Closing Date...........................................................................21
    4.2    Deliveries by Seller...............................................................21
    4.3    Deliveries by Purchaser.........................................................22
    4.4    Termination of Agreement.....................................................22
    4.5    Procedure Upon Termination ................................................23
    4.6    Effect of Termination............................................................23
    4.7    Expense Reimbursement Amount..........................................24

**ARTICLE V REPRESENTATIONS AND WARRANTIES OF SELLER**............................24
    5.1    Organization and Good Standing...........................................24
    5.2    Authorization of Agreement..................................................25
    5.3    Conflicts; Consents of Third Parties .....................................25
    5.4    Financial Statements .............................................................26
    5.5    Tangible Personal Property....................................................26
    5.6    Absence of Certain Developments.........................................27
    5.7    Taxes.....................................................................................27
    5.8    Real Property .........................................................................27
    5.9    Intellectual Property..............................................................28
    5.10   Material Contracts.................................................................29
    5.11   Labor and Employee Benefits................................................31

Confidential
*Signed by Judge Louise DeCarl Adler April 07, 2011*

5.12    Litigation .................................................................................................31
5.13    Compliance with Laws; Permits ................................................................31
5.14    Environmental Matters ...............................................................................32
5.15    Title to Purchased Assets ...........................................................................32
5.16    Related-Party Transactions .........................................................................33
5.17    Financial Advisors .....................................................................................33
5.18    Customers ...................................................................................................33

**ARTICLE VI REPRESENTATIONS AND WARRANTIES OF PURCHASER ................33**
6.1    Organization and Good Standing ...............................................................33
6.2    Authorization of Agreement ......................................................................33
6.3    Conflicts; Consents of Third Parties ..........................................................34
6.4    Litigation ...................................................................................................34
6.5    Financial Advisors .....................................................................................34

**ARTICLE VII BANKRUPTCY COURT MATTERS ................................................35**
7.1    Bankruptcy Court Filings ...........................................................................35
7.2    Bidding Procedures ....................................................................................38

**ARTICLE VIII COVENANTS ..................................................................................38**
8.1    Access to Information .................................................................................38
8.2    Conduct of the Business Pending the Closing ............................................39
8.3    Consents .....................................................................................................41
8.4    Publicity .....................................................................................................41
8.5    Use of Name ...............................................................................................41
8.6    Permits and Licenses; Consents ..................................................................42
8.7    Non Competition and Non-Solicitation by Seller .......................................43
8.8    Post-Closing Wind-Up ...............................................................................44

**ARTICLE IX EMPLOYEES AND EMPLOYEE BENEFITS .................................44**
9.1    Employment ...............................................................................................44
9.2    Employee Benefits ......................................................................................45

**ARTICLE X TAXES ..................................................................................................45**
10.1    Transfer Taxes ...........................................................................................46
10.2    Purchase Price Allocation ..........................................................................46

**ARTICLE XI MISCELLANEOUS ...........................................................................46**
11.1    No Survival of Representations and Warranties ..........................................46
11.2    Expenses .....................................................................................................46
11.3    Injunctive Relief .........................................................................................46
11.4    Submission to Jurisdiction; Consent to Service of Process .........................46
11.5    Waiver of Right to Trial by Jury .................................................................47
11.6    Entire Agreement; Amendments and Waivers .............................................47
11.7    Governing Law ...........................................................................................47
11.8    Notices .......................................................................................................47
11.9    Severability ................................................................................................48

Confidential

*Signed by Judge Louise DeCarl Adler April 07, 2011*

11.10  Binding Effect; Assignment..................................................................49
11.11  Non-Recourse .....................................................................................49
11.12  Counterparts .......................................................................................49
11.13  Releases...............................................................................................49

EXHIBITS

Exhibit A    Form of Sale Order

Exhibit B    Form of Bidding Procedures Order

Exhibit C    Form of Assignment and Bill of Sale and Form of Trademark Assignment

Exhibit D    Form of Assumption Agreement

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT, dated as of January 17, 2011 (this "Agreement"), is entered into by and between NexPrise, Inc., a Delaware corporation (the "Seller"), and Trubiquity, Inc., a Michigan corporation ("Purchaser").  Capitalized terms used in this Agreement but not otherwise defined herein shall have the meanings ascribed to them in Section 1.1.

W I T N E S S E T H:

WHEREAS, Seller presently conducts the Business;

WHEREAS, Seller intends to file voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of California (the "Bankruptcy Court") on or before January 18, 2011 (the "Petition Date"), upon which Seller will become a debtor-in-possession under the Bankruptcy Code; and

WHEREAS, subject to the terms and conditions herein, Seller desires to sell, transfer and assign to Purchaser, and Purchaser desires to purchase, acquire and assume from Seller, pursuant to sections 363 and 365 of chapter 11, title 11 of the United States Code, 11 U.S.C. § 101 - 1532 (the "Bankruptcy Code"), all of the Purchased Assets and Assumed Liabilities, all as more specifically provided herein.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements hereinafter contained, the parties hereby agree as follows:

## ARTICLE I

## DEFINITIONS

1.1    Certain Definitions.

For purposes hereof, the following terms shall have the meanings specified in this Section 1.1:

"Affiliate" means, with respect to any Person, any other Person that, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person, and the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by contract or otherwise.

"Agreement" has the meaning set forth in the preamble.

"Asset Sale Guidelines" means the Guidelines for the Sale of Substantially All Assets under §363 Within 60 Days of the Filing of the Petition, which are annexed as Appendix D3 to the Local Bankruptcy Rules.

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

"Assumed Liabilities" has the meaning set forth in Section 2.3.

"Avoidance Actions" means all claims, causes of action and rights of Seller under Sections 544 through 553 of the Bankruptcy Code;

"Avoidance Action Release" means a full and irrevocable release, by Seller, on behalf of itself and its bankruptcy estate, in form and substance to Purchaser's satisfaction, of all Avoidance Actions against (i) Persons listed on Schedule 2.1(h), which the parties hereto may mutually agree to revise and update in writing up to two business days before the Closing, and (ii) Persons with whom Seller had an active business relationship with respect to the Business before the Closing Date and which Purchaser determines in good faith  may have an active business relationship with the Business after the Closing Date, which release shall have been approved by the Sale Order and which release shall be enforceable by Purchaser.

"Bankruptcy Case" has the meaning set forth in the recitals.

"Bankruptcy Code" has the meaning set forth in the recitals.

"Bankruptcy Court" has the meaning set forth in the recitals.

"Bidding Procedures" means the bidding procedures contained within the Bidding Procedures Order.

"Bidding Procedures Order" means an order of the Bankruptcy Court, in form and substance acceptable to Purchaser in its sole discretion and substantially in the form of Exhibit B attached hereto, approving, *inter alia*, the (a) Bidding Procedures and (b) the Reimbursable Expenses.

"Business" means all businesses conducted by Seller on or before the date hereof, including the creation and licensing of Web-based solutions for customers to manage content in private online collaborative environments.

"Business Day" means any day of the year on which national banking institutions in New York and California are open to the public for conducting business and are not required or authorized to close.

"Chapter 11 Plan" means any chapter 11 plan of reorganization or liquidation that is proposed or confirmed in the Bankruptcy Case.

"Closing" has the meaning set forth in Section 4.1.

"Closing Date" has the meaning set forth in Section 4.1.

"Closing Date Deferred Revenue Amount" means the amount of Deferred Revenue as of immediately prior to the Closing.

"Closing Date Deferred Revenue Excess Amount" means the amount by which the Closing Date Deferred Revenue Amount exceeds the Deferred Revenue Normalized Target

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

Amount. For purposes of clarity, if the Closing Date Deferred Revenue Amount is less than the Deferred Revenue Normalized Target Amount, the Closing Date Deferred Revenue Excess Amount shall be equal to zero.

"Code" means the Internal Revenue Code of 1986, as amended.

"Committee" means any official committee of creditors or interest holders appointed in these cases pursuant to section 1102 of the Bankruptcy Code or otherwise.

"Contract" means any contract, license, commitment, indenture, note, bond, lease or other agreement or binding arrangement or understanding, whether written or oral, including customer agreements and other similar agreements arising therefrom or relating thereto.

"control" has the meaning set forth in the definition of "Affiliate."

"Copyright" means, collectively:

(i)      all original works of authorship fixed in any tangible medium of expression;

(ii)     all right, title, and interest therein, thereto, and thereunder;

(iii)    all registrations, applications for registration, and recordings thereof, including all registrations, applications for registration, and recordings thereof in or with the United States Copyright Office or any other similar Governmental Body of the United States of America, any State thereof, or any other country or any political subdivision thereof;

(iv)    all extensions and renewals thereof;

(v)     all licenses thereof;

(vi)    all rights therein provided by international treaties and conventions;

(vii)   all rights of action arising therefrom; and

(viii)  all claims for damage by reason of any past, present, or future infringement, misuse, or misappropriation thereof.

"Cure Amount Reduction" has the meaning set forth in Section 2.5(c).

"Cure Amounts" has the meaning set forth in Section 2.5.

"Deferred Revenue" means all deposits, pre-paid accounts receivable or any other payment that Seller or the Business received from any Person in connection with services that are required to be provided by Seller after the receipt by Seller of such deposit, pre-paid accounts receivable or payment, which services have not yet been performed and for which Seller has any Liabilities with respect thereto.

"Deferred Revenue Normalized Target Amount" shall mean $790,000.

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

"Documents" means all files, documents, instruments, papers, books, reports, records, photographs, letters, budgets, forecasts, ledgers, journals, title policies, customer lists, regulatory filings, operating data and plans, technical documentation (design specifications, functional requirements, operating instructions, logic manuals, flow charts, etc.), user documentation (installation guides, user manuals, training materials, release notes, working papers, etc.), marketing documentation (sales brochures, flyers, pamphlets, web pages, etc.) and other similar materials related to the Business and the Purchased Assets, in each case whether or not in electronic form.

"Employees" means all individuals, whether or not actively at work, who are employed by Seller as of the date hereof in connection with the Business, together with individuals who are hired in respect of the Business after the date hereof and prior to the Closing.

"Employee Benefit Plans" has the meaning set forth in Section 5.11(b).

"Environmental Law" means, whenever in effect, any Law relating to pollution, human health and safety, or the protection of the environment or natural resources, and the regulations promulgated pursuant thereto.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

"ERISA Affiliate" has the meaning set forth in Section 2.4(m).

"Escheated Assets" means any and all ownership interests or rights of Seller in property unclaimed and in possession by the State of California or a political subdivision thereof.

"Excluded Assets" has the meaning set forth in Section 2.2.

"Excluded Contracts" has the meaning set forth in Section 2.2.

"Excluded Liabilities" has the meaning set forth in Section 2.4.

"Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

"GAAP" means generally accepted accounting principles in the United States as of the date hereof.

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

"Governmental Body" means any government or governmental or regulatory body thereof, or political subdivision thereof, whether federal, state, or local, or any agency, instrumentality or authority thereof, or any court or arbitrator (public or private), and shall include the Bankruptcy Court.

"Financial Statements" has the meaning set forth in Section 5.4.

"Hazardous Material" means any substance, material or waste which is listed, defined, classified or regulated as a pollutant, contaminant, or as hazardous or toxic, including petroleum and its by products, asbestos, noise, odor, mold or radiation, or for which liability or standards of conduct may be imposed, under any Environmental Law.

"Indebtedness" of any Person means (a) all Liabilities of such Person (whether created, incurred, assumed, guaranteed or otherwise borne) for borrowed money and all Liabilities issued in substitution for or exchange of Liabilities for borrowed money; (b) all Liabilities of such Person evidenced by bonds, debentures, notes or similar debt instruments; (c) all Liabilities to pay the deferred purchase price of property or services with respect to which such Person is liable, contingently or otherwise, as obligor or otherwise, including all earn-out obligations; (d) all capital lease Liabilities of such Person; (e) all unsatisfied Liabilities for "withdrawal liability" to a "multiemployer plan" as such terms are defined under ERISA; (f) all Liabilities under defined benefit pension plans and/or retiree medical plans; (g) all amounts owed to any Person under any non-competition, consulting or similar arrangements; (h) all change-of-control or similar payments or increased costs which are triggered in whole or in part by the transactions contemplated by this Agreement; (i) all Liabilities of such Person under deferred compensation plans, phantom stock plans, stock appreciation rights plans, bonus plans, or for severance payments or similar arrangements made payable in whole or in part as a result of the transactions contemplated herein; (j) all off-balance sheet financing of such Person; (k) all accrued and unpaid interest on, and any prepayment premiums, penalties or similar contractual charges in respect of, any of the foregoing Liabilities of such Person computed as though payment is being made in respect thereof on the Closing Date; and (l) all guarantees by such Person of the foregoing Indebtedness of others, including, in the case of each of the above items, any accrued interest on such amounts.

"Intellectual Property" means, collectively:

(i)     all intellectual or other intangible personal property other than Copyrights, Patents, and Trademarks, including to the extent not constituting Copyrights, Patents, or Trademarks all:

(A)     inventions (whether or not patentable, whether or not reduced to practice, and whether or not yet made the subject of a pending patent application or applications);

(B)     ideas, discoveries, and conceptions of potentially patentable subject matter, including any patent disclosures (whether or not reduced to practice, and whether or not yet made the subject of a pending patent application or applications);

(C)     moral rights, including rights of paternity and integrity, and waivers of such rights by others;

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

(D)     Software and Technology;

(E)     universal resource locators and other Internet address identifiers, including top-level Internet domain names;

(F)     Trade Secrets and other confidential, technical, and business information of any kind, including ideas, formulas, compositions, inventions, discoveries, and conceptions of inventions whether patentable or unpatentable and whether or not reduced to practice;

(G)     whether or not confidential, technology (including know-how and show-how), manufacturing and production processes and techniques, research and development information, drawings, specifications, designs, plans, flow charts, coding sheets, proposals, technical data, financial, marketing, and business data, pricing and cost information, business and marketing plans, and customer, prospect, and supplier lists and information; and

(H)     copies and tangible embodiments of all of the foregoing, in whatever form or medium;

(ii)     all right, title, and interest therein, thereto, and thereunder, including all common Law rights therein;

(iii)     all licenses thereof;

(iv)     all rights therein provided by international treaties and conventions;

(v)     all rights of action arising therefrom; and

(vi)     all claims for damage by reason of any past, present, or future infringement, misuse, or misappropriation thereof.

"Intellectual Property Licenses" means (i) any grant to a third Person of any right to use any of the Intellectual Property, Copyrights, Patents or Trademarks owned by Seller, and (ii) any grant to Seller of a right to use a third Person's Intellectual Property, Copyrights, Patents or Trademarks in connection with the operation of the Business.

"IRS" means the Internal Revenue Service.

"Knowledge of Seller" means the actual knowledge of, and the knowledge that would be obtained upon reasonable inquiry and investigation by, Pat Clark, John Lynch or Ted Leshar.

"Law" means any federal, state or local law, statute, code, ordinance, rule, regulation, directive, other provision having the force or effect of law, all judicial and administrative Orders, all contractual obligations, and all common law.

"Leased Real Property" has the meaning set forth in Section 5.8(b).

"Leased Tangible Personal Property" has the meaning set forth in Section 5.5(b).

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

"Legal Proceeding" means any judicial, administrative or arbitral actions, suits, proceedings (public or private) or claims or any proceedings by or before a Governmental Body.

"Liability" means any direct or indirect liability, obligation, indebtedness, claim, loss, damage, deficiency, obligation, penalty, responsibility, cost or expense, of whatever kind or nature, whether fixed or unfixed, choate or inchoate, liquidated or unliquidated, secured or unsecured, accrued or unaccrued, known or unknown, absolute or contingent or otherwise, including any liability for Taxes.

"Lien" means any lien, encumbrance, pledge, mortgage, deed of trust, security interest, claim, lease, charge, option, right of first refusal, right of first offer, covenant, right of way, easement, servitude, proxy, voting trust or agreement, transfer restriction under any shareholder or similar agreement or encumbrance, or any other restriction or limitation whatsoever.

"Local Bankruptcy Rules" means Local Rules of the United States Bankruptcy Court for the Southern District of California.

"Material Adverse Effect" means any change or effect that is or would reasonably be expected to be, materially adverse to the business, assets, condition (financial or otherwise), or results of operations of Seller or the Business, or to the ability of Seller to perform its obligations under this Agreement, excluding (i) changes or effects affecting the United States or world financial markets or general economic or political condition that do not disproportionately affect Seller, (ii) changes or effects arising from terrorism, attack, war, riot, insurrection, other armed conflict or civil disorder, earthquakes, hurricanes, tornadoes, fire, windstorm, flood or other Acts of God that do not disproportionately affect Seller, (iii) changes or effects arising from the filing of, or the pendency of, the Bankruptcy Case, and any action approved by, or motion made before, the Bankruptcy Court or (iv) any decrease in the trading volumes of Seller's common stock.

"Material Contract" has the meaning set forth in Section 5.10.

"Order" means any order, injunction, judgment, decree, ruling, writ, assessment or arbitration award of a Governmental Body.

"Ordinary Course of Business" means the ordinary and usual course of normal day-to-day operations of the Business through the date hereof consistent with past practice.

"Patents" means, collectively:

(vii)    all interests in patent or similar rights under the Laws of the United States of America or any other country or any political subdivision thereof;

(viii)    all right, title, and interest therein, thereto, and thereunder;

(ix)    all patents, patent applications, registrations, applications for registration, and recordings thereof, including all registrations, applications for registration, and recordings thereof in or with the United States Patent and Trademark Office or any other similar

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

Governmental Body of the United States of America, any State thereof, or any other country or any political subdivision thereof;

    (x)    all extensions, renewals, reissues, divisions, continuations, continuations-in-part, and reexaminations thereof;

    (xi)    all licenses thereof;

    (xii)    all rights therein provided by international treaties and conventions;

    (xiii)    all rights of action arising therefrom; and

    (xiv)    all claims for damage by reason of any past, present, or future infringement, misuse, or misappropriation thereof.

"Owned Purchased Intellectual Property" has the meaning set forth in Section 5.9(a).

"Permits" means any approvals, permits, Orders, authorizations, consents, registrations, licenses, variances or certificates of a Governmental Body.

"Person" means any individual, corporation, limited liability company, partnership, firm, joint venture, association, joint-stock company, trust, unincorporated organization, Governmental Body or other entity.

"Personal Property Leases" has the meaning set forth in Section 5.5(b).

"Petition Date" has the meaning set forth in the recitals.

"Purchase Price" has the meaning set forth in Section 3.2.

"Purchased Assets" has the meaning set forth in Section 2.1.

"Purchased Business Name Trademarks" has the meaning set forth in Section 8.5.

"Purchased Contracts" has the meaning set forth in Section 2.1(b).

"Purchased Intellectual Property" has the meaning set forth in Section 2.1(c).

"Purchaser" has the meaning set forth in the preamble.

"Purchaser Documents" has the meaning set forth in Section 6.2.

"Purchaser Released Parties" has the meaning set for in Section 11.13.

"Real Property Lease" has the meaning set forth in Section 5.8(b).

"Reimbursable Expenses" has the meaning set forth in Section 4.7.

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

"Release" means any release, spill, emission, leaking, pumping, pouring, emptying, escaping, dumping, injection, deposit, disposal, discharge, dispersal, or leaching into the indoor or outdoor environment, or into or out of any property.

"Restricted Business" has the meaning set forth in Section 8.7(a).

"Restricted Party" has the meaning set forth in Section 8.7(b).

"Restricted Period" has the meaning set forth in Section 8.7(a).

"Representatives" means the directors, officers, employees, legal counsel, accountants, advisors, consultants, agents and other representatives of Seller, Purchaser or any other Person.

"Sale Hearing" means the hearing at which the Bankruptcy Court will consider approval of the sale of all of the Purchased Assets and the transfer of all of the Assumed Liabilities to the Purchaser.

"Sale Motion" means the motion to be filed in the Bankruptcy Court on the Petition Date (or within one business day thereafter), in form and substance acceptable to the Purchaser, requesting approval of the Bidding Procedures Order and the Sale Order, including any exhibits thereto and any related documents or pleadings filed by the Seller in connection therewith.

"Sale Order" means an order of the Bankruptcy Court, in form and substance acceptable to Purchaser in its sole discretion and substantially in the form of Exhibit A attached hereto, (i) approving, *inter alia*, the (a) sale of the Purchased Assets to Purchaser free and clear of all Liens and claims pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, such Liens and claims to attach to the Purchase Price, (b) assumption of the Assumed Liabilities by Purchaser, (c) assumption and assignment to Purchaser of the Purchased Contracts, Intellectual Property Licenses, Permits, Real Property Leases and Personal Property Leases pursuant to section 365 of the Bankruptcy Code, and (ii) providing that (a) Purchaser has acted in "good faith" within the meaning of section 363(m) of the Bankruptcy Code, (b) this Agreement was negotiated, proposed and entered into by the parties without collusion, in good faith and from arm's length bargaining positions, (c) the Bankruptcy Court shall retain jurisdiction to resolve any controversy or claim arising out of or relating to this Agreement, or any breach hereof as provided in Section 11.4, and (d) this Agreement and the transactions contemplated hereby may be specifically enforced against and binding upon, and not subject to rejection or avoidance by, Seller or any chapter 7 or chapter 11 trustee of Seller.

"Seller" has the meaning set forth in the preamble.

"Seller Released Party" has the meaning set forth in Section 11.13.

"Seller Documents" has the meaning set forth in Section 5.2.

"Software" means any and all (i) computer programs, including any and all software implementations of algorithms, models and methodologies, whether in source code or

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

object code, (ii) databases and compilations, including any and all data and collections of data, whether machine readable or otherwise, (iii) descriptions, flow-charts and other work product used to design, plan, organize and develop any of the foregoing, screens, user interfaces, report formats, firmware, development tools, templates, menus, buttons and icons, and (iv) all documentation including user manuals and other training documentation related to any of the foregoing.

"Subsidiary" of any Person means any other Person of which a majority of the outstanding voting securities or other voting equity interests are owned, directly or indirectly, by such Person.

"Tangible Personal Property" means all motor vehicles, furniture, fixtures, furnishings, equipment, leasehold improvements, and other tangible personal property owned, used or leased by Seller, including all such artwork, desks, chairs, tables, any and all computer and computer-related hardware, including computers, file servers, facsimile servers, scanners, color printers, laser printers and networks, copiers, telephone lines and numbers, telecopy machines and other telecommunication equipment, cubicles and miscellaneous office furnishings and supplies.

"Tax Authority" means any federal, state or local government, or agency, instrumentality or employee thereof, charged with the administration of any Law or regulation relating to Taxes.

"Tax Return" means all returns, declarations, reports, claims for refund, estimates, information returns and statements required to be filed in respect of any Taxes, including any schedule or attachment thereto, and including any amendment thereof.

"Taxes" means (i) all federal, state or local taxes, charges or other assessments, including all net income, gross receipts, capital, sales, use, ad valorem, value added, transfer, franchise, profits, inventory, capital stock, license, withholding, payroll, employment, social security, unemployment, excise, severance, stamp, occupation, property and estimated taxes, and (ii) all interest, penalties, fines, additions to tax or additional amounts imposed by any Tax Authority in connection with any item described in clause (i).

"Technology" means, collectively, all designs, formulae, algorithms, procedures, methods, techniques, ideas, know-how, research and development, technical data, programs, subroutines, tools, materials, specifications, processes, inventions (whether patentable or unpatentable and whether or not reduced to practice), apparatus, creations, improvements, works of authorship and other similar materials, and all recordings, graphs, drawings, reports, analyses, and other writings, and other tangible embodiments of the foregoing, in any form whether or not specifically listed herein, and all related technology, that are owned by Seller.

"Termination Date" has the meaning set forth in Section 4.4(b).

"Trademarks" mean collectively

(xv)    all rights under and interests in any trademark, service mark, trade name, identifying symbols, logos, emblems, signs, insignia or other similar designations of origin,

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

including common law rights, under the Laws of the United States of America or any other country or any political subdivision thereof;

(xvi)    all right, title, and interest therein, thereto, and thereunder;

(xvii)    all registrations, applications for registration, and recordings thereof, including all registrations, applications for registration, and recordings thereof in or with the United States Patent and Trademark Office or any other similar Governmental Body of the United States of America, any State thereof, or any other country or any political subdivision thereof;

(xviii)  all extensions, renewals, reissues, and reexaminations thereof;

(xix)    all licenses thereof;

(xx)     all rights therein provided by international treaties and conventions;

(xxi)    all goodwill associated therewith;

(xxii)   all rights of action arising therefrom; and

(xxiii)  all claims for damage by reason of any past, present, or future infringement, misuse, or misappropriation thereof.

"Trade Payables" has the meaning set forth in Section 2.4(f).

"Trade Payable Reduction" has the meaning set forth in Section 2.5(b).

"Trade Secrets" means technical, scientific, and other know-how and information, trade secrets, knowledge, technology, means, methods, processes, practices, formulas, assembly procedures, computer programs, source code, apparatuses, specifications, books, records, production data, publications, databases, reports, manuals, data and results, whether in written or electronic form or hereafter developed.

"Transferred Employees" has the meaning set forth in Section 9.1.

"Transfer Taxes" has the meaning set forth in Section 10.1.

"WARN Act" means the Worker Adjustment and Retraining Notification Act and any rules or regulations as have been issued in connection with the foregoing.

"Welfare Benefits" has the meaning set forth in Section 9.2(a).

"Wind-Up" has the meaning set forth in Section 8.8.

1.2    Other Definitional and Interpretive Matters.

(a)    Unless otherwise expressly provided, for purposes of this Agreement, the following rules of interpretation shall apply:

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

Calculation of Time Period.  When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded.  If the last day of such period is not a Business Day, the period in question shall end on the next succeeding Business Day.

Dollars.  Any reference herein to "$" shall mean U.S. dollars.

Exhibits/Schedules.  All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part hereof as if set forth in full herein.  Any matter or item disclosed on one schedule shall be deemed to have been disclosed on each other schedule if, and only if, such disclosures' applicability to such other schedule is reasonably apparent from such disclosure.  Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein shall be defined as set forth herein.

Gender and Number.  Any reference herein to gender shall include all genders, and words imparting the singular number only shall include the plural and vice versa.

Headings.  The provision of a Table of Contents, the division hereof into Articles, Sections and other subdivisions and the insertion of headings are for convenience of reference only and shall not affect or be utilized in construing or interpreting this Agreement.  All references herein to any "Section" are to the corresponding Section hereof unless otherwise specified.

Herein.  The words such as "herein," "hereinafter," "hereof," and "hereunder" refer to this Agreement as a whole and not merely to a subdivision in which such words appear unless the context otherwise requires.

Including.  The word "including" or any variation thereof means "including, without limitation" and shall not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it.

(b)    The parties hereto have participated jointly in the negotiation and drafting of this Agreement and, in the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by the parties hereto and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provision hereof.

## ARTICLE II

## PURCHASE AND SALE OF ASSETS; ASSUMPTION OF LIABILITIES

2.1    Purchase and Sale of Assets.  Subject to the entry of the Sale Order and the terms and the conditions of this Agreement and on the basis of the representations, warranties, covenants and agreements herein contained (including the representations and warranties of the Seller referred to herein), at the Closing, other than the assets explicitly included in the Excluded Assets, Purchaser shall purchase, acquire and accept from Seller, and Seller shall sell, transfer, assign, convey and deliver to Purchaser, all right, title and interest in, to and under the

Confidential

assets of Seller or that are used or held for use in the conduct of the Business, free and clear of all Liens, including the following assets (such assets, the "Purchased Assets"):

(a)    all accounts receivable of Seller, other than any accounts receivable arising out of any Excluded Asset;

(b)    all rights of Seller under the Contracts to which Seller is a party (including the Material Contracts or any other Contract to which Seller is a party that should have been listed on Schedule 5.10(a)) other than Excluded Contracts, including those Contracts set forth on Schedule 2.1(b); provided, however, that Purchaser may elect not to assume Seller's rights under any Contract set forth on Schedule 2.1(b) by providing written notice thereof (specifically identifying each such Contract) and an updated Schedule 2.1(b) to Seller no later than one (1) Business Day before the date of the Sale Hearing, at a time of day that is not later than twenty-four (24) hours before the scheduled start of the Sale Hearing, and Purchaser may elect to assume Seller's rights to any Contract of Seller or the Business not set forth on Schedule 2.1(b) (including any Contract previously set forth on Schedule 2.2(c)) by providing written notice thereof (specifically identifying each such Contract) and an updated Schedule 2.1(b) and, if applicable, Schedule 2.2(c) to Seller no later than 5:30PM Pacific time two (2) Business Days before the date of the Sale Hearing (the Contracts on Schedule 2.1(b), as it may be revised and updated by Purchaser prior to the Closing, collectively, the "Purchased Contracts");

(c)    all Copyrights, Trademarks and Intellectual Property and rights relating thereto (including rights under the Intellectual Property Licenses) used or held for use in the Business or otherwise held by Seller (the "Purchased Intellectual Property");

(d)    all Tangible Personal Property of Seller;

(e)    all Documents of Seller, including Documents relating to services, marketing, advertising, promotional materials, Purchased Intellectual Property, personnel files for Transferred Employees, all customer files and documents (including credit information), supplier lists, records, literature and correspondence, but excluding (i) personnel files for Employees of Seller who are not Transferred Employees or such files as may not be transferred under applicable Law, (ii) any Documents related solely to Excluded Assets; provided, however, to the extent such Documents are used or held for use in the conduct of the Business, Purchaser shall be entitled to receive copies thereof and (iii) the Documents set forth in Section 2.2(g) (it being understood and agreed that promptly, and in any event no more than five (5) Business Days following the Closing Date, Seller shall provide Buyer with a copy of the Documents set forth in (A) Section 2.2(g)(ii), (B) Section 2.2(g)(iv) (with respect to the last three years), (C) Section 2.2(g)(vi) and (D) to the extent reasonably related to the Purchased Assets or Assumed Liabilities, Section 2.2(g)(vii));

(f)    all Permits held by Seller, including the Permits set forth on Schedule 2.1(f);

(g)    all rights of Seller under non-disclosure or confidentiality, non-compete or non-solicitation agreements with Transferred Employees or third parties, as set forth on Schedule 2.1(g);

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

(h)      all of Seller's rights, claims, credits, causes of action or rights of set off against third parties, including rights under vendors' and manufacturers' warranties, indemnities, guaranties, Avoidance Actions that are subject to the Avoidance Action Release, and causes of action under applicable state Law, other than solely with respect to Excluded Assets;

(i)      all rights of Seller under or pursuant to all warranties, representations and guarantees made by suppliers, manufacturers and contractors other than any warranties, representations and guarantees pertaining to any Excluded Assets;

(j)      all refunds, to the extent received or payable after the date hereof, due from, or payments due on, claims with any insurers of Seller to the extent related to losses arising before the Closing Date;

(k)      the Escheated Assets;

(l)      all supplies owned by Seller;

(m)      all security deposits deposited by or on behalf of Seller, other than with respect to Excluded Assets; and

(n)      all goodwill and other intangible assets of Seller associated with the Business, including customer and supplier lists and the goodwill associated with the Purchased Intellectual Property or otherwise with the Business (including the Business as a going concern).

2.2      <u>Excluded Assets</u>.  Nothing contained herein shall be deemed to sell, transfer, assign or convey the Excluded Assets to Purchaser, and Seller shall retain all right, title and interest to, in and under the Excluded Assets.  "Excluded Assets" shall mean the following assets, properties, interests and rights of Seller, other than the Purchased Assets:

(a)      all cash or cash equivalents of Seller;

(b)      all real property owned or leased by Seller, together with all improvements, non-removable fixtures and other appurtenances thereto;

(c)      all rights of Seller under the Contracts set forth on <u>Schedule 2.2(c)</u> (as it may be updated by Purchaser in accordance with <u>Section 2.1(b)</u>) (collectively, the "<u>Excluded Contracts</u>");

(d)      all assets held (by Seller or in any trust) under Employee Benefit Plans;

(e)      all assets, properties, interests and rights of Seller set forth on any written notice (specifically identifying each such assets, properties, interests and rights) from Purchaser to Seller no later than one (1) Business Day before the date of the Sale Hearing;

(f)      all security deposits deposited by or on behalf of the Seller with respect to Excluded Assets;

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

(g)     all Documents (i) prepared in connection with the transactions contemplated by this Agreement, (ii) the charter, qualifications to conduct business as a foreign corporation, arrangements with registered agents relating to foreign qualification, taxpayer and other identification numbers, seals, minute books, equityholder and equity transfer records of Seller, (iii) confidential personnel records pertaining to any employee of the Business who is not transferred to Purchaser, (iv) all Tax Returns of Seller and any notes, worksheets, files or documents prepared in connection thereto, (v) any legal files or other documents that are not related to the Assumed Liabilities or Purchased Assets, (vi) all insurance policies of Seller and (vii) other books and records that Seller or any Affiliate of Seller is required by law to retain originals thereof;

(h)     all Avoidance Actions other than those subject to the Avoidance Action Release;

(i)     all claims for and rights to receive Tax refunds for Taxes paid by Seller prior to the Closing Date and all rights and claims under insurance policies of Seller for matters arising before the Closing Date;

(j)     any claims, actions, prepayments, refunds, causes of action, rights of recovery, rights of set off, and rights of recoupment of any kind or nature (including any such item relating to Taxes) with respect to the Excluded Assets;

(k)     all rights of Seller under this Agreement and the other agreements contemplated hereby; and

(l)     any and all claims relating to any of the foregoing described in this Section 2.2.

2.3    Assumption of Liabilities.  Subject to the entry of the Sale Order, and the terms and the conditions of this Agreement and on the basis of the representations, warranties, covenants and agreements herein contained (including the representations and warranties of the Seller referred to herein), at the Closing, the Seller shall assign to the Purchaser, and the Purchaser shall assume from the Seller, effective as of the Closing, only the following Liabilities of Seller (collectively, the "Assumed Liabilities"):

(a)     all Liabilities arising under the Purchased Contracts which first arise from and after the Closing Date, except as set forth in Section 2.4 and Section 2.5; and

(b)     all Liabilities to provide goods or services arising out of Deferred Revenue to the extent included in the Closing Statement; and

(c)     all Liabilities of Purchaser arising under this Agreement, including amounts required to be paid by Purchaser hereunder.

2.4    Excluded Liabilities.  It is expressly understood and agreed that, except for the Liabilities expressly included in Assumed Liabilities, Purchaser shall not assume or be liable for any Liability or Contract of the Business, Seller or any of its Affiliates, at any time existing or asserted, whether or not accrued, fixed, contingent or otherwise, whether known or unknown,

Confidential

and whether or not recorded on the books and records of Seller or any of its Affiliates (the "Excluded Liabilities"), which Excluded Liabilities include the following:

(a)       all notes, bonds or other evidences of, Liabilities, or claims or causes of action arising from, connected with, related to or with respect to, any Indebtedness of the Seller, including any of the foregoing referenced in Schedule 2.4(a);

(b)       all claims or Liability of the Seller arising prior to or after the Petition Date that are not Assumed Liabilities, including those that are subject to compromise under the Bankruptcy Case;

(c)       all Liabilities arising out of Excluded Assets, including Excluded Contracts;

(d)       all Liabilities arising out of the development of the InfoPrise technology, including those Liabilities owed or claimed to be owed to Net Enrich;

(e)       all Liabilities with respect to (i) accrued and unpaid payroll (including applicable withholding, payroll, employment, social security and unemployment Taxes thereon) as of the Closing Date, (ii) accrued and unused vacation, sick days and personal days through the Closing Date,  (iii) all other claims, causes of action or charges related to any Employee who is terminated by Seller as of or prior to the Closing Date and then rehired by the Purchaser subsequent to the Closing Date, in each case (i)-(iii) only to the extent arising on or prior to, or relating to employment service rendered on or prior to, the Closing, and (iv) Employees who are not Transferred Employees;

(f)       all Liabilities relating to accounts payable of Seller (including those incurred in the Ordinary Course of Business (including, for the avoidance of doubt, (i) invoiced accounts payable and (ii) accrued but uninvoiced accounts payable)) ("Trade Payables"), except as set forth in Section 2.5(b);

(g)       all Liabilities with respect to Cure Amounts;

(h)       all Liabilities for Taxes relating to the Purchased Assets or the Business for any Tax periods (or portions thereof) ending on or prior to the Closing Date;

(i)       all Transfer Taxes imposed in connection with the transactions contemplated hereby;

(j)       all fees or commissions to any broker or investment bank in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Seller;

(k)       all Liabilities of Seller arising under this Agreement, including amounts required to be paid by Seller hereunder;

(l)       all Liabilities of Seller related to any Deferred Revenue to the extent not included in the Closing Statement;

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

(m)    all Liabilities under or relating to the Employee Benefit Plans, any "employee benefit plan" (as defined in ERISA § 3(3)), or any other benefit plan, program or arrangement of any kind at any time maintained, sponsored or contributed or required to be contributed to by Seller or any Person which is or has ever been under common control, or which is or has ever been treated as a single employer, with Seller under § 414(b), (c), (m) or (o) of the Code ("ERISA Affiliate") or with respect to which Seller or any ERISA Affiliate has any Liability;

(n)    all Liabilities, regardless of whether such Liabilities attach or accrue in the first instance to Purchaser or Seller, relating to any environmental, health or safety matter, including those arising under Environmental Law or relating to Hazardous Materials, and related to, or arising out of, (i) Seller or any predecessor or Affiliate of Seller, (ii) any Excluded Asset, (iii) the ownership or operation of the Business, the Purchased Assets or the Leased Real Property before the Closing Date, or (iv) any operations, events, facts, conditions, or circumstances occurring or existing prior to the Closing Date, including any Release, threatened Release, treatment, storage, disposal or arrangement for disposal of or any exposure of any Person to Hazardous Materials (whether or not constituting a breach of any representation or warranty herein);

(o)    Liabilities for the distributions or treatment provided on account of all claims against, interests in, or obligations of the Seller as provided by Chapter 11 Plan confirmed in Seller's Chapter 11 Case Plan (including all liabilities for administrative claims against the Seller);

(p)    any and all professional fees and expenses (including out of pocket expenses) incurred by or otherwise due from Seller (whether or not billed) with respect to professionals retained by the Seller or any Committee to act on behalf of the Seller, the Committee, or the Purchaser that are related to the Chapter 11 Case or the Seller's restructuring or sale efforts and that have not previously been paid by the Seller, including the fees and expenses of any of the following: (i) counsel for the Seller, (ii) financial advisors to the Seller (iii) any other professionals retained by the Seller to act on behalf of the Seller in the Chapter 11 Case, (iv) counsel to any Committee, (v) financial advisors to any Committee, and (vi) any other professionals retained by the Committee to act on behalf of the Seller in the Chapter 11 Case; and

(q)    any other Liability of Seller or the Business not explicitly included in Assumed Liabilities.

2.5    <u>Cure Amounts and Trade Payables</u>.

(a)    At Closing and pursuant to section 365 of the Bankruptcy Code, Seller shall assign to Purchaser and Purchaser shall assume from Seller the Purchased Contracts, Intellectual Property Licenses for the Purchased Intellectual Property, Permits and Personal Property Leases.  In connection with such assumption and assignment, if there has been a default under any Purchased Contracts, Intellectual Property Licenses for the Purchased Intellectual Property, Permits and Personal Property Leases, Seller shall cure, or provide adequate assurance that they shall promptly cure, all monetary defaults, including all actual or pecuniary losses, if any, that have resulted from such defaults, as determined by the Bankruptcy Court, necessary to

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

cure all such defaults (the "Cure Amounts"). The Bankruptcy Court shall retain jurisdiction to determine any disputes regarding Cure Amounts. Notwithstanding the pendency of a dispute regarding any Cure Amount, the Closing may occur. For the avoidance of doubt, Purchaser may, but shall have no obligation to, participate in any dispute resolution or litigation surrounding Cure Amounts.

(b)    At Closing, Purchaser, upon the prior written notice of Seller, may assume and pay any or all of the Trade Payables set forth on Schedule 2.5(b), upon which event the Purchase Price shall be reduced in an amount equal to the amount of such Trade Payables (the "Trade Payable Reduction").

(c)    At Closing, Purchaser may assume and pay the Cure Amounts, upon which event the Purchase Price shall be reduced in an amount equal to the amount of such Cure Amounts (the "Cure Amount Reduction").

2.6    Further Conveyances and Assumptions. From time to time following the Closing, Seller and Purchaser shall, and shall cause their respective Affiliates to, execute, acknowledge and deliver all such further conveyances, notices, assumptions, releases and acquittances and such other instruments, and shall take such further actions, as may be necessary or appropriate to assure fully to Purchaser and its successors or assigns, the sale, transfer, assignment, conveyance and delivery of all of the Purchased Assets, including all of the properties, rights, titles, interests, estates, remedies, powers and privileges intended to be sold, transferred, assigned, conveyed and delivered to Purchaser hereunder and pursuant to the Seller Documents and to assure fully to Seller and its Affiliates and their successors and assigns, the assumption of the Assumed Liabilities, and to otherwise make effective the transactions contemplated hereby and thereby.

## ARTICLE III

## CONSIDERATION; CONDITIONS TO CLOSING

3.1    Determination of Consideration. No later than two (2) Business Days prior to the Closing, Seller shall deliver to Purchaser a statement (the "Closing Statement") setting forth, in reasonable detail, the Closing Date Deferred Revenue Amount, which shall be reasonably acceptable to Purchaser, which shall make its determination in good faith and which, for purposes of such determination, shall not find the Closing Statement unacceptable due to any of the following: (i) changes to the Deferred Revenue Amount caused by renewals of existing Contracts in the Ordinary Course of Business pursuant to Section 8.2(b)(ii), which do not involve a material change to the underlying terms of the Contract except the renewal of the performance period thereunder, (ii) changes to the Deferred Revenue Amount caused by new Contracts entered into with the prior written consent of Purchaser and (iii) any changes to the Deferred Revenue Amount which are not material in amount, either individually or in the aggregate).

3.2    Consideration. The aggregate consideration for the Purchased Assets shall be (a) an amount in cash equal to (the "Purchase Price") (i) two million dollars ($2,000,000) minus (ii) an amount equal to the Trade Payable Reduction, minus (iii) an amount equal to the Cure

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

Amount Reduction, <u>minus</u> (iv) the Closing Date Deferred Revenue Excess Amount and (b) the assumption of the Assumed Liabilities.

    3.3  <u>Payment of Purchase Price</u>.  On the Closing Date, Purchaser shall pay the Purchase Price to Seller by wire transfer of immediately available funds.

    3.4  <u>Conditions Precedent to Obligations of Purchaser</u>.  The obligation of Purchaser to consummate the transactions contemplated hereby is subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived in writing by Purchaser in whole or in part):

    (a)  the representations and warranties of Seller set forth herein qualified as to materiality or Material Adverse Effect shall be true and correct in all respects, and those not so qualified shall be true and correct in all material respects, as of the date of this Agreement and at and as of the Closing Date as though made on the Closing Date, except to the extent such representations and warranties relate to an earlier date (in which case such representations and warranties qualified as to materiality or Material Adverse Effect shall be true and correct in all respects, and those not so qualified shall be true and correct in all material respects, on and as of such earlier date) and except to the extent not reasonably expected to be adverse, in any material respect, to either the Purchased Assets, the Assumed Liabilities or the Business;

    (b)  Seller shall have performed and complied in all material respects with all obligations and agreements required herein to be performed or complied with by Seller pursuant to this Agreement prior to the Closing Date;

    (c)  Purchaser shall have received a certificate signed by an authorized officer or member, as applicable, of each of Seller, dated the Closing Date, to the effect of the matters contained in clauses (a) and (b) of this <u>Section 3.4</u>;

    (d)  Seller shall have delivered, or caused to be delivered, to Purchaser all of the items set forth in <u>Section 4.2</u>;

    (e)  Purchaser and Seller shall have obtained any other consent, approval, order or authorization of, or registration, declaration or filing with, any Governmental Body or any other Person with respect to the consents set forth on <u>Schedule 3.4(e)</u> required to be obtained or made in connection with the execution and delivery of this Agreement or the consummation of the transactions contemplated herein without any terms or conditions that, individually or in the aggregate, would result in the loss of any material benefits reasonably expected to be received by Purchaser in connection with the transactions contemplated hereby, or a material increase in expenses; <u>provided</u>, <u>however</u>, that any Contract that may be assumed and assigned pursuant to section 365 of the Bankruptcy Code shall not be included on <u>Schedule 3.4(e)</u>;

    (f)  following the date hereof, there has not been any circumstance or occurrence with respect to the results of operation of the Business or the Purchased Assets which would reasonably be expected to result in more than a five percent (5%) decrease in annual revenues of the Business for the calendar year ending on December 31, 2011, as compared to the revenue of the Business for the twelve month period ending on the date hereof;

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

(g)    there will not have been any Material Adverse Effect since the date hereof;

(h)    the Bidding Procedures Order shall be a Final Order, provided that Purchaser expressly agrees that Purchaser will, in an exercise of its reasonable discretion, waive the condition set forth in this Section 3.4(h) to the extent that (a) the Bidding Procedures Order has not become a Final Order due to the existence of an appeal with respect to the Bidding Procedures Order that will not materially affect the validity of the Sale Order and (b) the Bidding Procedures Order remains in full force and effect and shall not have been stayed, vacated, modified or supplemented without the Purchaser's prior written consent,

(i)    to the extent any auction shall have occurred in accordance with the Bidding Procedures, the Purchaser shall have emerged as the successful bidder;

(j)    the Bankruptcy Court shall have entered the Sale Order, in form and substance satisfactory to Purchaser, and the Sale Order shall be have remained in full force and effect and shall not have been stayed, vacated, modified or supplemented without the Purchaser's prior written consent; and

(k)    Purchaser shall have received cash proceeds from financing sources, on terms and conditions reasonably acceptable to Purchaser, in amounts necessary for Purchaser to consummate the transactions contemplated hereby.

3.5    <u>Conditions Precedent to Obligations of Seller</u>.  The obligations of Seller to consummate the transactions contemplated hereby are subject to the fulfillment, prior to or on the Closing Date, of each of the following conditions (any or all of which may be waived by Seller in whole or in part):

(a)    the representations and warranties of Purchaser set forth herein qualified as to materiality shall be true and correct, and those not so qualified shall be true and correct in all material respects, as of the date of this Agreement and at and as of the Closing Date as though made on the Closing Date, except to the extent such representations and warranties relate to an earlier date (in which case such representations and warranties qualified as to materiality shall be true and correct, and those not so qualified shall be true and correct in all material respects, on and as of such earlier date);

(b)    Purchaser shall have performed and complied in all material respects with all obligations and agreements required hereby to be performed or complied with by Purchaser pursuant to this Agreement on or prior to the Closing Date;

(c)    Seller shall have received a certificate signed by an authorized officer of Purchaser, dated the Closing Date, to the effect of the matters contained in clauses (a) and (b) of this <u>Section 3.5</u>; and

(d)    Purchaser shall have delivered, or caused to be delivered, to Seller all of the items set forth in <u>Section 4.3</u>.

3.6    <u>Conditions Precedent to Obligations of Purchaser and Seller</u>.  The respective obligations of Purchaser and Seller to consummate the transactions contemplated hereby are

Confidential
*Signed by Judge Louise DeCarl Adler April 07, 2011*

subject to the fulfillment, on or prior to the Closing Date, of the following condition (which may be waived by both Purchaser and Seller in whole or in part to the extent permitted by applicable Law): there shall not be in effect any Order restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby.

3.7    <u>Frustration of Closing Conditions</u>.  Neither Seller nor Purchaser may rely on the failure of any condition set forth in <u>Section 3.4</u>, <u>3.5</u> or <u>3.6</u>, as the case may be, to the extent such failure was caused by such party's failure to comply with any provision hereof.

**ARTICLE IV**

**CLOSING AND TERMINATION**

4.1    <u>Closing Date</u>.  The closing of the purchase and sale of the Purchased Assets and the assumption of the Assumed Liabilities provided for in <u>Article II</u> (the "<u>Closing</u>") shall take place at the offices of Kirkland & Ellis LLP located at 601 Lexington Avenue, New York, New York 10022 or at such other place as the parties may agree in writing) at 12:00 p.m. (Eastern time) on the date that is two Business Days following the satisfaction (or the waiver thereof by the party entitled to waive that condition) of the conditions set forth in <u>Article III</u> (other than conditions that by their nature are to be satisfied at the Closing, but subject to the satisfaction or waiver of such conditions), unless another time or date, or both, are agreed to in writing by the parties hereto.  The date on which the Closing shall be held is referred to herein as the "<u>Closing Date</u>."  Unless otherwise agreed by the parties in writing, the Closing shall be deemed effective and all right, title and interest of Seller to be acquired by Purchaser hereunder shall be considered to have passed to Purchaser as of 12:00 p.m. (Eastern time) on the Closing Date.

4.2    <u>Deliveries by Seller</u>.  At the Closing, Seller shall deliver to Purchaser:

(a)    a duly executed assignment and bill of sale and trademark assignment in substantially the forms of <u>Exhibit C</u> attached hereto and general assignments of all other Purchased Intellectual Property; Purchaser reserves the right to designate one or more entities to accept title to the Purchased Assets and Purchased Intellectual Property, <u>provided</u>, <u>however</u>, that no such designation shall relieve Purchaser of any of its obligations and Liabilities hereunder;

(b)    a duly executed assumption agreement in substantially the form of <u>Exhibit D</u> attached hereto;

(c)    the officer's certificate required to be delivered pursuant to <u>Section 3.4(c)</u>;

(d)    the Sale Order issued by the Bankruptcy Court; and

(e)    all other instruments of conveyance and transfer and certificates and affidavits, in form and substance reasonably acceptable to Purchaser, as may be necessary to convey the Purchased Assets to Purchaser, including non-foreign affidavits dated as of the Closing Date, sworn under penalty of perjury and in form and substance required under Treasury Regulations issued pursuant to Code § 1445 stating that Seller is not a "foreign person" as defined in Code § 1445.

**Confidential**
*Signed by Judge Louise DeCarl Adler April 07, 2011*

4.3    <u>Deliveries by Purchaser</u>.  At the Closing, Purchaser shall deliver to Seller:

(a)    the Purchase Price, in immediately available funds, as set forth in <u>Section 3.2</u>;

(b)    a duly executed assumption agreement in substantially the form of <u>Exhibit D</u> attached hereto; and

(c)    the officer's certificate required to be delivered pursuant to <u>Section 3.5(c)</u>.

4.4    <u>Termination of Agreement</u>.  This Agreement may be terminated prior to the Closing as follows:

(a)    by Purchaser, if (i) the Bidding Procedures Order shall not have been entered by the date that is forty-five (45) days following the date hereof (as may be extended by the parties in writing) or (ii) the Closing shall not have occurred by the date that is sixty (60) days following the date that the Bidding Procedures Order is entered by the Bankruptcy Court; <u>provided however</u>, that if the Closing shall not have occurred by the date that is sixty (60) days following the date that the Bidding Procedures Order is entered into by the Bankruptcy Court solely as a result of breach by Purchaser of any of its obligations hereunder, then the Purchaser may not terminate this Agreement pursuant to <u>Section 4.4(a)</u>;

(b)    by Purchaser or Seller, if the Closing shall not have occurred by the date that is ninety (90) days following the date hereof (as may be extended by the parties in writing, the "<u>Termination Date</u>"); <u>provided</u>, <u>however</u>, that if the Closing shall not have occurred on or before the Termination Date due to a material breach of any covenants or agreements contained herein by Purchaser or Seller, then the breaching party may not terminate this Agreement pursuant to this <u>Section 4.4(b)</u>;

(c)    by mutual written consent of Seller and Purchaser;

(d)    by Seller or Purchaser, if there shall be in effect on the Termination Date any Law that makes consummation of the transaction contemplated by this Agreement illegal or otherwise prohibited or a Final Order of a Governmental Body of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby;

(e)    by Seller or Purchaser, if Purchaser is not the Winning Bidder (as defined in the Bidding Procedures);

(f)    by Seller or Purchaser, at any time after Seller files a stand-alone Chapter 11 Plan with the Bankruptcy Court or at any time after Seller files any Chapter 11 Plan that involves approval of a sale of substantially all or a material portion of the Purchased Assets to a party other than the Purchaser;

(g)    by Purchaser, if there shall be a breach by Seller of any representation, warranty, covenant or agreement of Seller contained in this Agreement which would result in a failure of a condition set forth in <u>Section 3.4</u> or <u>Section 3.6</u>, and which breach cannot be cured or

**Confidential**
*Signed by Judge Louise DeCarl Adler April 07, 2011*

has not been cured by Seller by the earlier of (i) fourteen (14) days after the giving of written notice by Purchaser to Seller of such breach and (ii) the Termination Date; provided, however, that Purchaser is not then in material breach of this Agreement;

(h)    by Seller, if there shall be a breach by Purchaser of any representation, warranty, covenant or agreement of Purchaser contained in this Agreement which would result in a failure of a condition set forth in Section 3.5 or Section 3.6, and which breach cannot be cured or has not been cured by Purchaser by the earlier of (i) fourteen (14) days after the giving of written notice by Seller to Purchaser of such breach and (ii) the Termination Date; provided however, that Seller is not then in material breach of this Agreement;

(i)    [Intentionally Omitted];

(j)    by Purchaser, if the Sale Order is modified in any material respect, in each case without the prior written consent of Purchaser;

(k)    by Purchaser, if the Bankruptcy Case is converted to cases under chapter 7 of the Bankruptcy Code, a trustee or examiner with expanded powers is appointed pursuant to the Bankruptcy Code or the Bankruptcy Court enters an order pursuant to section 362 of the Bankruptcy Code lifting the automatic stay with respect to any portion of the Purchased Assets or which results in the loss of a material benefit reasonably expected to be received by Purchaser;

(l)    by Purchaser, if the Seller's exclusive period to file and/or solicit acceptance of a plan of reorganization under section 1121 of the Bankruptcy Code shall have expired or been terminated; or

(m)    by Purchaser, if (i) the Sale Order is appealed, (ii) the closing of the sale is stayed pending appeal by the Bankruptcy Court, and (iii) the Seller shall not have successfully opposed or caused the dismissal, reversal or vacation of such stay on or prior to the date that is 30 days after the earlier of (x) the date on which an entity files a motion seeking the stay pending appeal in the Bankruptcy Court or (y) the Bankruptcy Court's entry of the stay order.

4.5    Procedure Upon Termination.  In no event shall Seller have the right to terminate this Agreement (other than pursuant to Section 4.4(h)) unless and until any and all amounts payable to Purchaser pursuant to Section 4.7 in connection with such proposed termination are available to be paid and have been set aside for payment to Purchaser pursuant to the terms of Section 4.7.  In the event of termination by Purchaser or Seller, or both, pursuant to Section 4.4, (i) written notice thereof shall forthwith be given to the other party or parties, and this Agreement shall terminate, and the purchase and assumption of the Purchased Assets and Assumed Liabilities hereunder shall be abandoned, without further action by Purchaser or Seller, and (ii) each party shall return or destroy all documents, work papers and other material of any other party relating to the transactions contemplated hereby, whether so obtained before or after the execution hereof, to the party furnishing the same.

4.6    Effect of Termination.  In the event that this Agreement is validly terminated as provided herein, then each of the parties shall be relieved of its duties and obligations arising hereunder after the date of such termination and such termination shall be without liability to Purchaser or Seller; provided, however, that the obligations of the parties set forth in this

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

Section 4.6, Section 4.7 and Article XII shall survive any such termination and shall be enforceable hereunder.

    4.7    Expense Reimbursement Amount.

    (a)    Seller shall, within two (2) Business Days after any termination of this Agreement pursuant to Article 4.4 or otherwise reimburse Purchaser for all of the reasonable out of pocket costs, fees and expenses incurred or to be incurred by Purchaser or its Affiliates, including reasonable fees, costs and expenses of any professionals (including financial advisors, outside legal counsel, accountants, experts and consultants) retained by Purchaser or its Affiliates in connection with or related to the authorization, preparation, investigation, negotiation, execution and performance of this Agreement, the transactions contemplated hereby, including the Chapter 11 Cases and other judicial and regulatory proceedings related to such transactions (such fees, costs and expenses, the "Reimbursable Expenses"); provided, however, that Purchaser shall present reasonable supporting documentation with respect to all Reimbursable Expenses for which it desires reimbursement and provided, further, that in no event shall Seller be required to pay Reimbursable Expenses in an amount greater than three-hundred thousand dollars ($300,000) in the aggregate.  Notwithstanding the foregoing, Seller shall not be required to reimburse the Reimbursable Expenses if this Agreement is terminated (i) by Seller pursuant to Section 4.4(b) (but only in the event Purchaser has not satisfied all conditions required to be satisfied by Purchaser prior to the Closing by Section 3.5 (other than those conditions that by their terms are to be satisfied at the Closing)), (ii) by Purchaser pursuant to Section 4.4(b) but only in the event the termination arises solely out of the delay or failure by Purchaser of the conditions required to be satisfied pursuant to Section 3.4(k), (iii) by both Purchaser and Seller mutually pursuant to Section 4.4(c) or (iv) by Seller pursuant to Section 4.4(h).

    (b)    Seller acknowledges and agrees that (i) the payment of the Reimbursable Expenses are integral parts of the transactions contemplated by this Agreement, (ii) in the absence of Seller's obligations to make these payments, Purchaser would not have entered into this Agreement, (iii) time is of the essence with respect to the approval of any payment of the Reimbursable Expenses, and (iv) the Reimbursable Expenses shall constitute an administrative expense of the Seller's bankruptcy estate senior to all other administrative expense claims under sections 503(b) and 507(a)(2) of the Bankruptcy Code.

    (c)    To comply with Section 9 of Appendix D3 to the Local Bankruptcy Rules, the Seller shall seek approval of this Section 4.7 pursuant to the Bidding Procedures Order.

## ARTICLE V

## REPRESENTATIONS AND WARRANTIES OF SELLER

    Seller hereby represents and warrants to Purchaser that:

    5.1    Organization and Good Standing.  Seller is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware and, subject to the limitations imposed on Seller as a result of having filed a petition for relief under the Bankruptcy Code, has all requisite corporate power and authority to own, lease and operate its properties and carry on the Business as now conducted.  Seller is duly qualified or authorized to

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

do business as a foreign corporation and is in good standing under the laws of each jurisdiction in which any property or asset owned, leased, licensed, operated or used by Seller, or any business, operation, or affair conducted by Seller makes it necessary or appropriate for Seller to be licensed or qualified to do business and in good standing in such jurisdiction.  Seller has delivered to Purchaser true, complete and correct copies of its organizational documents as in effect on the date hereof.

5.2    <u>Authorization of Agreement</u>.  Except for such authorization as is required by the Bankruptcy Code (as hereinafter provided for), Seller has the requisite power, authority and legal capacity to execute and deliver this Agreement and each other agreement, document, or instrument or certificate contemplated hereby or to be executed by Seller in connection with the consummation of the transactions contemplated hereby (the "<u>Seller Documents</u>"), to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby.  The execution and delivery hereof and the Seller Documents and the consummation of the transactions contemplated hereby and thereby have been duly authorized by all requisite corporate power and authority or other action on the part of Seller.  This Agreement has been, and each of the Seller Documents will be at or prior to the Closing, duly and validly executed and delivered by Seller and, assuming the due authorization, execution and delivery by the other parties hereto and thereto and the entry of the Sale Order, this Agreement constitutes, and each of the Seller Documents when so executed and delivered will constitute, legal, valid and binding obligations of Seller, enforceable against Seller in accordance with their respective terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar Laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

5.3    <u>Conflicts; Consents of Third Parties</u>.

(a)    Except as set forth on <u>Schedule 5.3(a)</u>, none of the execution and delivery by Seller hereof or by Seller of the Seller Documents, the consummation of the transactions contemplated hereby or thereby, or compliance by Seller with any of the provisions hereof or thereof will conflict with, or result in any violation of or default (with or without notice or lapse of time, or both) under, or give rise to a right of termination, cancellation or acceleration of any obligation or loss of a material benefit under, or give rise to any obligation of Seller to make any payment under, or to the increased, additional, accelerated or guaranteed rights or entitlements of any Person under, or result in the creation of any Liens upon any of the properties or assets of Seller under any provision of (i) the certificate of incorporation of Seller; (ii) subject to entry of the Sale Order, any Purchased Contract or Permit to which Seller is a party or by which any of the properties or assets of Seller is bound; (iii) subject to entry of the Sale Order, any Order of any Governmental Body applicable to Seller or any of the properties or assets of Seller as of the date hereof; or (iv) subject to entry of the Sale Order, any applicable Law.

(b)    Except as set forth on <u>Schedule 5.3(b)</u>, no consent, waiver, approval, Order, Permit or authorization of, or declaration or filing with, or notification to any Person or Governmental Body is required on the part of Seller in connection with the execution and delivery hereof or the Seller Documents, the compliance by Seller with any of the provisions

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

hereof or thereof, the consummation of the transactions contemplated hereby or thereby or the taking by Seller of any other action contemplated hereby or thereby, except for (i) the entry of the Sale Order and the Bidding Procedures Order and (ii) any immaterial consents, waivers, approvals, Orders, Permits, authorizations, declarations, filings and notifications.

5.4     Financial Statements.    Attached hereto as Schedule 5.4 are true and complete copies of (i) the reviewed consolidated balance sheets of Seller as of December 31, 2007, December 31, 2008 and December 31, 2009 (draft) and the related unaudited consolidated statements of income and of cash flows of Seller for the years then ended (draft for 2009) and (ii) the unaudited consolidated balance sheet of Seller as at November 30, 2010 and the related consolidated statement of income and cash flows of Seller for the 11 month period then ended (such audited and unaudited statements, including the related notes and schedules thereto, are referred to herein as the "Financial Statements").    Each of the Financial Statements has been prepared in accordance with GAAP consistently applied without modification of the accounting principles used in the preparation thereof throughout the periods presented and presents fairly in all material respects the consolidated financial position, results of operations and cash flows of Seller as of the dates and for the periods indicated therein, subject to normal year-end adjustments and the absence of complete notes in the case of the unaudited statements.    Except as disclosed on Schedule 5.4, neither Seller nor the Business has any Liability not reflected as Liabilities in the December 31, 2009 Financial Statements other than those which (a) are Excluded Liabilities, (b) are Liabilities incurred since July 31, 2010 in the Ordinary Course of Business or (c) are not required to be reflected under GAAP.    Schedule 5.4 sets forth all Liabilities of Seller related to Deferred Revenue as of the date hereof.

5.5     Tangible Personal Property.

(a)     Seller owns the Tangible Personal Property free and clear of all Liens.

(b)     Schedule 5.5(b) sets forth all leases or other agreements (individually, a "Personal Property Lease") relating to Tangible Personal Property leased by Seller (the "Leased Tangible Personal Property") resulting in annual payments of $5,000 or more.    Each Personal Property Lease is a valid and existing leasehold interest of the applicable Seller free and clear of all Liens, except Liens set forth on Schedule 5.5(b).    Seller is not in material default under, and, to the Knowledge of Seller, no other party is in material default under, any Personal Property Lease, and no event has occurred and is continuing that constitutes or, with notice or the passage of time, or both, would constitute a material default under such Personal Property Lease.

(c)     All Tangible Personal Property and Leased Tangible Personal Property of Seller is and immediately after the Closing will be free of defects and deficiencies (other than), is and immediately after the Closing will be in good operating condition and repair (ordinary and reasonable wear and tear excepted), is and immediately after the Closing will be suitable for the purposes for which it is currently used or intended to be used and, together with the other Purchased Assets, immediately after the Closing will be sufficient for Purchaser to conduct the Business without interruption and in the Ordinary Course of Business as it has been conducted by Seller.    Seller has not, and immediately after the Closing Seller will not have, leased or subleased to any other Person any of its Tangible Personal Property or Leased Tangible Personal Property.    Seller has not, and immediately after the Closing Seller will not have, assigned to any

Confidential

other Person its interest under any lease or sublease with respect to any Leased Tangible Personal Property of Seller.  The rental set forth in each lease or sublease of any item or distinct group of Leased Tangible Personal Property of Seller is and immediately after the Closing will be the actual rental being paid by Seller and there are and immediately after the Closing will be no separate agreements or understandings in respect thereof.

(d)    Schedule 5.5(d) sets forth a true and complete list of all vehicles used or held for use in the conduct of the Business.

5.6    Absence of Certain Developments.

Except as expressly contemplated hereby or as set forth on Schedule 5.6, since December 31, 2009, (i) Seller has conducted the Business only in the Ordinary Course of Business, (ii) other than the Bankruptcy Case, there has not been any circumstance or occurrence that constitutes a Material Adverse Effect and (iii) Seller has not taken, or failed to take, any action, which the taking of or failure to take after the date hereof would have required the prior written consent of Purchaser pursuant to Section 8.2 other than in the Ordinary Course of Business.

5.7    Taxes.

(a)    (i) Seller has timely filed all Tax Returns required to be filed with the appropriate Tax Authorities in all jurisdictions in which such Tax Returns are required to be filed (taking into account any extension of time to file granted or to be obtained on behalf of Seller); and (ii) all Taxes shown to be payable on Tax Returns of Seller or that are otherwise due and payable have been paid;

(b)    Seller is not a "Foreign Person" within the meaning of Section 1445 of the Code;

(c)    there are no Tax Liens on the Purchased Assets;

(d)    Seller have complied in all material respects with all applicable Laws relating to the payment and withholding of Taxes (including withholding and reporting requirements under Code sections 3401 through 3406, 6041 and 6049 and similar provisions under any other Laws) and has, within the time and in the manner prescribed by Law, withheld from employee wages and paid over to the proper government authorities all required amounts; and

(e)    no audits or other administrative proceedings or court proceedings with regard to any Taxes or Tax Returns of Seller is presently pending, or to the Knowledge of Seller, has been threatened in writing against Seller.

5.8    Real Property.

(a)    Seller does not own any real property.

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

(b)      Schedule 5.8(b) sets forth the documents which comprise all leases, licenses and subleases, including all amendments thereto and guarantees thereof (individually, a "Real Property Lease"), relating to real property leased, licensed or subleased by Seller (the "Leased Real Property").  Each Real Property Lease is a valid and existing leasehold or license interest of the applicable Seller free and clear of Liens. Seller is not in material default under, and, to the Knowledge of Seller, no other party is in material default under, any Real Property Lease, and no event has occurred and is continuing that constitutes or, with notice or the passage of time, or both, would constitute a material default under such Real Property Lease.  The rental set forth in each Real Property Lease of any parcel of Leased Real Property of Seller is and immediately after the Closing will be the actual rental being paid by Seller and there are and immediately after the Closing will be no separate agreements or understandings in respect thereof.  Seller has not assigned to any other Person its interest under any Real Property Lease of Seller.

(c)      There are no condemnation or eminent domain proceedings of any kind pending or threatened against the Leased Real Property of Seller.  Seller has not leased, subleased or licensed to any other Person any parcel or any portion of any parcel of the Leased Real Property of Seller.

(d)      Seller is in possession of each parcel of the Leased Real Property of Seller. All existing water, sewer, steam, gas, electricity, telephone, and other utilities required for the use, occupancy, and operation of the Leased Real Property of Seller is adequate in all material respects for the conduct of the Business as it currently is conducted.  To the Knowledge of Seller, no improvements to the Leased Real Property have been materially damaged by any casualty.

5.9      Intellectual Property.

There are no Patents used or held for use in the Business or otherwise owned by Seller.  Except as set forth on Schedule 5.9(a), Seller owns or has valid licenses to use all Purchased Intellectual Property.  Other than the Intellectual Property, Copyrights, Patents and Trademarks used by Seller pursuant to an Intellectual Property License, Seller owns all right, title and interest in the Purchased Intellectual Property (including the items listed on Schedule 5.9(d) and on Schedule A to the form of trademark assignment attached as Exhibit D hereto) (the "Owned Purchased Intellectual Property") free and clear of all Liens.  The Purchased Intellectual Property includes all the Intellectual Property, Copyrights, Patents and Trademarks that are, as of the date hereof, used in connection with the conduct and operation of the Business.  As of the date hereof, there has been no assertion or claim made to Seller asserting invalidity, misuse or unenforceability of any Purchased Intellectual Property or challenging Seller's right to use or transfer or ownership of the applicable Purchased Intellectual Property or asserting ownership of any Owned Purchased Intellectual Property by any other Person.

(i)      All Purchased Intellectual Property of Seller is and immediately after the Closing will be in full force and effect.  Seller has not, and immediately after the Closing Seller will not have, granted any license or other right to any other Person with respect to any material Purchased Intellectual Property of

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

Seller, other than end-user licenses to its services that incorporate any portion of the Purchased Intellectual Property of Seller.

(ii)    Each Trademark included in the Purchased Intellectual Property is and immediately after the Closing will be in full force and effect.  Seller has not, and immediately after the Closing Seller will not have, granted any license or other right to any other Person with respect to any Trademark.

(b)    Schedule 5.9(b) sets forth all material Intellectual Property Licenses to which Seller is a party as of the date hereof.  Each Intellectual Property License is in full force and effect as of the date hereof and Seller is not in material default thereunder and, to the Knowledge of Seller, no other party thereto is in material default thereunder, and no event has occurred and is continuing that constitutes or, with notice or the passage of time, or both, would constitute a material default under any such Intellectual Property License.  All Intellectual Property Licenses of Seller are and immediately after the Closing will be in full force and effect.  Seller has not, and immediately after the Closing Seller will not have, granted any sublicense or other right to any other Person with respect to any Intellectual Property Licenses of Seller, other than end-user licenses to its products that incorporate any portion of Intellectual Property Licenses of Seller, in each case in accordance with such Intellectual Property Licenses.

(c)    To the Knowledge of Seller, the rights of Seller in, to, and under the Purchased Intellectual Property and the Intellectual Property Licenses of Seller do not and immediately after the Closing, and Seller's use thereof in the operation of the Business, will not, misappropriate, conflict with or infringe any intellectual property of any other Person.  Seller has received no claim or notice from any Person alleging any such misappropriation, conflict or infringement.

(d)    Schedule 5.9(d) sets forth all Internet domain names used or held for use in conducting the Business or otherwise held by Seller, each of which is included in Purchased Intellectual Property.

5.10    Material Contracts.

(a)    Schedule 5.10(a) sets forth all of the following Contracts to which Seller is a party or is otherwise bound, relating to the Business or which otherwise may bind or affect the Purchased Assets (collectively, the "Material Contracts"):

(i)    Contracts with any Affiliate or current or former officer, director, stockholder or Affiliate of Seller;

(ii)    Contracts for the sale of any of the assets of the Business for consideration in excess of $5,000;

(iii)    Contracts relating to incurrence of Indebtedness or the making of any loans, in each case involving amounts in excess of $5,000;

(iv)    Contracts which require, or are reasonably expected to require, expenditures by Seller in excess of $5,000 per annum;

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

(v)     Contracts resulting in, or are reasonably expected to result in, the receipt by the Business of more than $5,000 per annum in the aggregate;

(vi)     Contracts which materially restrict the Business or Seller from engaging in any business anywhere in the United States;

(vii)     Contracts containing any (a) non-competition, non-solicitation or similar agreements or arrangements or (b) "earn-out" or similar agreements or arrangements;

(viii)     Contracts relating to any material joint venture, partnership or alliance;

(ix)     Contracts imposing a Lien on any Purchased Asset;

(x)     Contracts providing for severance, retention, change in control or similar payments;

(xi)     Contracts for the current employment of any Person on a full-time, part-time or consulting or other basis;

(xii)     Contracts providing for the license of another Person's Intellectual Property other than licenses relating to the Seller's use rights regarding "off the shelf" or standard products;

(xiii)     Contracts providing for royalty payments; or

(xiv)     Contracts that are otherwise material to the Business or the Purchased Assets or the operation thereof.

(b)     Each Material Contract is legal, valid, binding and enforceable against Seller and, to the Knowledge of Seller, each other party thereto, and is in full force and effect (in each case, subject to the Bankruptcy Case and applicable bankruptcy, insolvency, reorganization, moratorium or other Laws affecting creditors' rights generally and subject to general principles of equity, regardless of whether considered in a proceeding in equity or at law).  Except as set forth on Schedule 5.10(b), Seller is not in default under any Material Contract and, to the Knowledge of Seller, no other party to any Material Contract is in default thereof and no event has occurred and is continuing that constitutes or, with notice or the passage of time, or both, would constitute, a material default thereunder.  Seller has delivered or otherwise made available to Purchaser true, correct and complete copies of all Material Contracts, together with all amendments, modifications or supplements thereto.  Except as set forth on Schedule 5.10(b), no consents or approvals of any Person are required by Seller to assign any rights under any Purchased Contract to Purchaser.  The assignment by Seller of its rights under the Purchased Contracts to Purchaser at Closing will not result in any violation or default (with or without notice or lapse of time or both) under, or give rise to any right of termination, cancellation or acceleration of any obligation or loss of a material benefit under, or give rise to any obligation of Purchaser to make any payment under, or to the increased, additional, accelerated or guaranteed

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

rights or entitlements of any Person under, or result in the creation of any Liens upon any of the properties or assets of Purchaser following the Closing.

5.11    <u>Labor and Employee Benefits</u>.

(a)    Seller is not a party to any collective bargaining agreement (or any other agreement with any labor organization) and does not have any relationship with any labor organization.  Seller is in compliance in all material respects with all applicable laws relating to employment and employment practices, the employment of labor, and, to the Knowledge of Seller, has not engaged in any unfair labor practice or unlawful employment practice, and there are no pending or unremedied grievances or unfair labor practices or other employment-related claims against Seller.  There is no labor strike, slowdown or work stoppage relating to Seller pending or, to the Knowledge of Seller, threatened against Seller.  Seller has not experienced any work stoppages or been a party to any proceedings before the National Labor Relations Board or other Governmental Body involving any issues for the three (3) years prior to the date hereof or been a party to any arbitration proceeding arising out of or under collective bargaining agreements for the three years prior to the date hereof.  Seller has not received notice of any employment-related charge or complaint against Seller before the Equal Employment Opportunity Commission or the Department of Labor or any other Governmental Body.  Seller has not implemented any plant closing or mass layoff of employees that could implicate the WARN Act or similar state, local or foreign laws or regulations.

(b)    <u>Schedule 5.11(b)</u> lists all material "employee benefit plans", as defined in Section 3(3) of ERISA, and all other material employee benefit arrangements or payroll practices, including, bonus plans, consulting or other compensation agreements, incentive, equity or equity-based compensation, or deferred compensation arrangements, stock purchase, severance pay, sick leave, vacation pay, salary continuation, disability, hospitalization, medical insurance, life insurance, scholarship programs maintained by Seller or to which Seller contributed or is obligated to contribute thereunder for current or former employees of Seller (the "<u>Employee Benefit Plans</u>").

(c)    No Lien pursuant to ERISA Sections 303(k) or 4068 or pursuant to Code Sections 412(n) (as in effect through the date of its repeal) or 430(k) in favor of, or enforceable by, the Pension Benefit Guaranty Corporation with respect to any of the Purchased Assets was perfected by the Pension Benefit Guaranty Corporation prior to the filing of the Bankruptcy Case.

5.12    <u>Litigation</u>.  Since December 1, 2007, except as set forth on <u>Schedule 5.12</u> and the Bankruptcy Case, there have not been and are no Legal Proceedings pending or, to the Knowledge of Seller, threatened, related to the Business or any of the Purchased Assets or against Seller.  Seller is not subject to any Order.

5.13    <u>Compliance with Laws; Permits</u>.

(a)    Since December 1, 2007, Seller has been and is in material compliance with all Laws applicable to Seller, the Purchased Assets or the Business.  As of the date hereof, Seller has not received any notice of or been charged with the violation or contravention of any

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

Laws.  To the Knowledge of Seller, no fact, circumstance, or condition exists that could give rise to or serve as the basis for the issuance or imposition of any Order with respect to any of the Purchased Assets.

(b)    As of the date hereof, Seller has all material Permits which are required for the operation of the Business as presently conducted.  Seller is not in material default or violation (and no event has occurred which, with notice or the lapse of time or both, would constitute a material default or violation) of any term, condition or provision of any Permit to which it is a party.  To the Knowledge of Seller, no fact, circumstance, or condition exists that could cause the acceleration, amendment, cancellation, revocation, rescission, suspension, termination, withdrawal, or other modification of any such Permits, or give any Person the right to do so.  Such Permits are assignable to Purchaser and, to the Knowledge of Seller, such Permits are and immediately after the Closing will be sufficient to allow the Purchaser to conduct the portion of the Business acquired by Purchaser immediately after the Closing in substantially the same manner as conducted by Seller as of the date hereof.

5.14    Environmental Matters.

As of the date hereof:

(a)    the Business, the Purchased Assets, and the operations of Seller with respect to the Purchased Assets or the Business have been conducted and are in compliance in all material respects with all applicable Environmental Laws;

(b)    Seller is not the subject of any outstanding material Order or Legal Proceeding respecting (i) compliance with or Liability under any Environmental Law, or (ii) any Release of a Hazardous Material, in each case, with respect to the Purchased Assets or the Business;

(c)    Seller has not received any notice, report or other information alleging any material violation of, or Liability under, any Environmental Law or any Permit issued pursuant to any Environmental Law;

(d)    there are no facts, events, conditions or circumstances, including the disposal or Release of, or exposure to, any Hazardous Materials, that would result in any material Liability under any Environmental Law or related to Hazardous Materials with respect to Seller, the Leased Real Property, the Business or the Purchased Assets; and

(e)    Seller has made available to Purchaser all material environmental reports, assessments, audits and studies with respect to the Leased Real Property, the Purchased Assets or the Business in its possession or control.

5.15    Title to Purchased Assets.

Seller has good and marketable title to the Purchased Assets.  The Purchased Assets are in good operating condition and repair (ordinary wear and tear excepted) and are fit for use in the ordinary course of business.  All of the Purchased Assets being conveyed to Purchaser hereunder will at the Closing be delivered free and clear of all Liens.  Seller owns or leases all buildings, structures, improvements, machinery, equipment, and other tangible assets necessary for the conduct of the Business as presently conducted.  The Purchased Assets constitute all of the

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

material assets, agreements, and licenses and all properties owned or leased by Seller (other than the Excluded Assets) in connection with the operation of the Business and are all material assets, agreements, and licenses and all real and personal properties (other than the Excluded Assets) necessary in connection with the conduct of the Business as presently conducted.

5.16    Related-Party Transactions.

No shareholder, option holder, warrant holder, director, or officer of Seller, or any of its Affiliates has any direct or indirect financial interest in any material supplier or customer of Seller, or any other Person with which Seller has a material business arrangement or relationship.

5.17    Financial Advisors.

No Person has acted, directly or indirectly, as a broker, finder or financial advisor for Seller in connection with the transactions contemplated hereby and no Person is entitled to any fee or commission or like payment from Purchaser in respect thereof.

5.18    Customers.

Schedule 5.18 hereto contains a list of the top ten (10) customers of Seller (on a consolidated basis) (by dollar volume of purchases from such customer), for the 2009 and 2010 fiscal years.  Seller has not received any indication from any such customer to the effect that, and Seller has no Knowledge that, any such customer will stop, materially decrease the rate of, or materially change the terms (whether related to payment, price or otherwise) with respect to, purchasing materials, products or services from Seller (whether as a result of the consummation of the transactions contemplated hereby or otherwise).

**ARTICLE VI**

**REPRESENTATIONS AND WARRANTIES OF PURCHASER**

Purchaser hereby represents and warrants to Seller that:

6.1    Organization and Good Standing.

Purchaser is a corporation duly organized, validly existing and in good standing under the laws of the State of Michigan and has all requisite corporate power and authority to own, lease and operate its properties and to carry on its business as now conducted.

6.2    Authorization of Agreement.

Purchaser has full corporate power and authority to execute and deliver this Agreement and each other agreement, document, instrument or certificate contemplated by this Agreement or to be executed by Purchaser in connection with the consummation of the transactions contemplated hereby and thereby (the "Purchaser Documents"), and to consummate the transactions contemplated hereby and thereby.  The execution, delivery and performance by Purchaser hereof and each Purchaser Document have been duly authorized by all necessary corporate action on behalf of Purchaser.  This Agreement has been, and each Purchaser

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

Document will be at or prior to the Closing, duly executed and delivered by Purchaser and (assuming the due authorization, execution and delivery by the other parties hereto and thereto) this Agreement constitutes, and each Purchaser Document when so executed and delivered will constitute, the legal, valid and binding obligations of Purchaser, enforceable against Purchaser in accordance with their respective terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

6.3    Conflicts; Consents of Third Parties.

(a)    None of the execution and delivery by Purchaser of this Agreement or the Purchaser Documents, the consummation of the transactions contemplated hereby or thereby, or the compliance by Purchaser with any of the provisions hereof or thereof will conflict with, or result in any violation of or default (with or without notice or lapse of time, or both) under, or give rise to a right of termination, cancellation or acceleration of any obligation or loss of a material benefit under, or give rise to any obligation of Purchaser to make any payment under, or to the increased additional accelerated or guaranteed rights or entitlements of any Person under, or result in the creation of any Liens upon any of the properties or assets of Purchaser under any provision of (i) the certificate of incorporation and bylaws of Purchaser, (ii) any material Contract to which Purchaser is a party or by which Purchaser or its properties or assets are bound or (iii) any Order of any Governmental Body applicable to Purchaser or by which any of the properties or assets of Purchaser are bound or (iv) any applicable Law.

(b)    No consent, waiver, approval, Order, Permit or authorization of, or declaration or filing with, or notification to, any Person or Governmental Body is required on the part of Purchaser in connection with the execution and delivery of this Agreement or the Purchaser Documents, the compliance by Purchaser with any of the provisions hereof or thereof, the consummation of the transactions contemplated hereby or thereby or the taking by Purchaser of any other action contemplated hereby or thereby, or for Purchaser to conduct the Business from and after the Closing Date, except for any immaterial consents, waivers, approvals, Orders, Permits, authorizations, declarations, filings and notifications.

6.4    Litigation.

As of the date hereof there are no Legal Proceedings pending or, to the knowledge of Purchaser, threatened against Purchaser or any of its Affiliates, which, if adversely determined, would have a material adverse effect on the ability of Purchaser to perform its obligations hereunder or to consummate the transactions contemplated hereby.

6.5    Financial Advisors.

No Person has acted, directly or indirectly, as a broker, finder or financial advisor for Purchaser in connection with the transactions contemplated hereby and no Person is entitled to any fee or commission or like payment in respect thereof.

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

# ARTICLE VII

# BANKRUPTCY COURT MATTERS

7.1    <u>Bankruptcy Court Filings</u>.

(a)    Seller shall use best reasonable efforts to comply (or obtain an order from the Bankruptcy Court waiving compliance) with all requirements under the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Asset Sale Guidelines in connection with obtaining approval of the Bidding Procedures Order and the Sale Order.  Seller and Purchaser acknowledge that to obtain such approval, Seller must demonstrate that it has taken its reasonable steps to obtain the highest or otherwise best price possible for the Purchased Assets, including, without limitation, giving notice of the transactions contemplated by this Agreement to creditors and other interested parties as ordered by the Bankruptcy Court and, if necessary, conducting the Auction.

(b)    Seller shall consult with Purchaser and its Representatives concerning the Bidding Procedures Order, the Sale Order, any other Orders of the Bankruptcy Court relating to the transactions contemplated herein, and Seller shall use commercially reasonable efforts to provide Purchaser with copies of all applications, pleadings, notices, proposed Orders and other documents relating to any such proceeding at least three (3) Business Days prior to filing such documents or otherwise submitting them to the Bankruptcy Court.

(c)    Seller agrees that it shall file the Sale Motion on or within one business day after the Petition Date, which motion shall be in a form satisfactory to the Purchaser, and Seller shall promptly take such actions as are requested by Purchaser  in obtaining entry of the Sale Order and a finding of adequate assurance of future performance by Purchaser, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Purchaser hereunder and demonstrating that Purchaser is a "good faith" purchaser under section 363(m) of the Bankruptcy Code.  Purchaser agrees that it shall use commercially reasonable efforts to cooperate with Seller and furnish affidavits and other documents or information necessary for Seller to obtain entry of the Sale Order and a finding of adequate assurance of future performance by Purchase and that Purchaser is a "good faith" purchaser under section 363(m) of the Bankruptcy Code.   In the event the entry of the Sale Order is appealed, Seller shall promptly use reasonable efforts to defend such appeal at its own cost and expense.

(d)    Seller shall consult with Purchaser and its Representatives concerning the Sale Order and any other motions or orders relating to this Agreement and the Sale Motion and use commercially reasonable efforts to provide Purchaser with copies of such documents at least three (3)  Business Days prior to filing such documents or otherwise submitting them to the Bankruptcy Court.

(e)    The forms of the Bidding Procedures Order, the Sale Order, and such other related documents submitted to the Bankruptcy Court shall be in form and substance satisfactory to Purchaser. The Sale Order shall include specifically (i) a finding that the sale of the Purchased Assets is free and clear of any Transfer Taxes and (ii) the Avoidance Action

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

Release.  Seller shall each use its best reasonable efforts to obtain on or before the Termination Date, entry of the Sale Order.  Seller and Purchaser shall use commercially reasonable efforts to cooperate, assist, and consult with each other regarding entry of the Sale Order.

(f)    Seller acknowledges and agrees that Purchaser has expended considerable time and expense in connection with this Agreement, and the negotiation thereof, and the identification and quantification of assets to be included in the Purchased Assets.  In consideration therefor, the Bidding Procedures Order shall allow the Reimbursable Expenses under Section 4.7 as administrative expense claims against the Debtor that are senior to all other administrative expense claims under sections 503(b) and 507(a)(2) of the Bankruptcy Code.

(g)    Seller shall not assume or reject any Contract under section 365 of the Bankruptcy Code without the prior written consent of Purchaser, which consent shall not be unreasonably withheld.  Within 2 business days after the Purchaser having been selected as the successful bidder pursuant to the Bidding Procedures, Seller shall have provided notice to all known parties to the Purchased Contracts that (i) Seller intend to assume and assign such Purchased Contracts to Purchaser, (ii) all Cure Amounts payable in connection with such assumption and assignment, which will be made a part of such notice, and (iii) such parties must file any objection to such assumption and assignment or such Cure Amounts by the deadline set forth in the Bidding Procedures Order or else waive and be estopped from any objection to such assumption and assignment or such Cure Amounts.

(h)    Seller shall use its reasonable efforts to obtain, at its expense, to the extent required, all waivers, permits, consents, approvals or other authorizations from Governmental Bodies and all other Persons, and to effect all registrations, filings and notices with or to Governmental Bodies and all other Persons, as may be required for the assumption and assignment of the Purchased Contracts, of the Intellectual Property Licenses, and the transfer of the Business' Permits, or to otherwise comply with all applicable Laws in connection with the transactions contemplated by this Agreement and to permit Purchaser to own the Purchased Assets.  Seller shall keep Purchaser reasonably informed, including providing copies of correspondence and other material information, on a timely basis, as to the status of Seller's efforts to obtain such waivers, permits, consents, approvals or other authorizations.

(i)    Seller covenants and agrees that the terms of any proposed order of the Bankruptcy Court that may be filed, proposed or submitted or supported by a Seller prior to or after entry of the Sale Order or consummation of the transactions contemplated hereby shall not conflict with, supersede, abrogate, nullify, modify or restrict the terms of this Agreement, the Bidding Procedures Order or the Sale Order or the rights of Purchaser hereunder or thereunder.

(j)    The Sale Order shall provide, among other things, that pursuant to sections 105, 363 and 365 of the Bankruptcy Code:

(i)    The Purchased Assets shall be sold to Purchaser free and clear of all liens, claims, interests, and encumbrances, including Liens as defined herein, of any type whatsoever (whether known or unknown, secured or unsecured or in the nature of setoff or recoupment, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Chapter II Cases, and whether imposed by agreement, understanding, Law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability), and the Assumed Liabilities shall be assumed by Purchaser, in each case, pursuant to this Agreement;

(ii)     Seller shall assign to Purchaser, or to such Affiliates of Purchaser as Purchaser shall designate prior to Closing with respect to certain of the Purchased Contracts, all of the Purchased Contracts as of the Closing Date pursuant to such Order;

(iii)    Seller shall, on or before the Closing Date or such other date ordered by the Bankruptcy Court, pay the Cure Amounts to the appropriate parties as ordered by the Bankruptcy Court so as to permit the assumption and assignment of each applicable Purchased Contract;

(iv)    the transactions contemplated by this Agreement were negotiated at arm's length, that Purchaser acted in good faith in all respects and Purchaser shall be found to be a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code;

(v)     the terms and conditions of the sale of the Purchased Assets to Purchaser as set forth herein are approved;

(vi)    Seller holds good and indefeasible title to the Purchased Assets;

(vii)   that the total consideration provided by Purchaser hereunder constitutes fair value for the Purchased Assets;

(viii)  Purchaser is acquiring none of the Excluded Assets;

(ix)    notice of the transactions contemplated hereby was adequate and proper under the circumstances and to the extent possible was provided to all creditors and parties in interest required to receive such notice pursuant to the Bankruptcy Rules or Order of the Bankruptcy Court, including any and all creditors holding claims, Liens, interests or encumbrances on the Purchased Assets or any of them;

(x)     Seller is authorized and directed to consummate the transactions contemplated by this Agreement and to comply in all respects with the terms of this Agreement;

(xi)    the sale process conducted by Seller and/or its agents (including any auction or bid solicitation process) was non-collusive, fair and reasonable and was conducted in good faith;

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

(xii)   Purchaser and Seller did not engage in any conduct which would allow the transactions contemplated by this Agreement to be set aside pursuant to Section 363(n) of the Bankruptcy Code;

(xiii)   Purchaser shall have no Liability or responsibility for any Liability of Seller arising under or related to the Purchased Assets or any other Liability relating to the Business or the Purchased Assets other than as expressly set forth in this Agreement, including successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor Law, de facto merger or substantial continuity, and to the fullest extent permissible under the Bankruptcy Code and applicable Law, that Purchaser is not a successor to, or otherwise liable for, the debts or obligations of Seller, or otherwise relating to the Business or the Purchased Assets, including any Claims for injuries or losses suffered to any persons or property for incidences or circumstances that occurred before the Closing, any environmental Claims or any labor or employment Claims other than as specifically set forth in this Agreement with respect to the Assumed Liabilities, and that any action threatened or commenced or claim made against Purchaser in respect of the Excluded Liabilities of Seller is and shall be enjoined;

(xiv)   the Avoidance Action Release is approved;

(xv)   the Sale Order is binding upon any successors to Seller, including any trustees in respect of Seller or the Purchased Assets in the case of any proceeding under Chapter 7 of the Bankruptcy Code; and

(xvi)   Purchaser shall have no liability for any Excluded Liability.

7.2   Bidding Procedures.

The bidding procedures to be employed with respect to this Agreement shall be those in the Bidding Procedures Order.

## ARTICLE VIII

## COVENANTS

8.1   Access to Information.

(a)   Seller agrees that, prior to the Closing Date, Purchaser shall be entitled, through its Representatives, to make such investigation of the properties, businesses and operations of the Business and such examination of the books and records of the Business, the Purchased Assets and the Assumed Liabilities as it reasonably requests and to make extracts and copies of such books and records. Any such investigation and examination shall be conducted during regular business hours upon reasonable advance notice and under reasonable circumstances and shall be subject to restrictions under applicable Law. Seller shall, and shall cause its Representatives to, cooperate with Purchaser and Purchaser's Representatives in connection with such investigation and examination, and Purchaser and its Representatives shall cooperate with Seller and its Representatives and shall use their reasonable efforts to minimize

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

any disruption to the Business.  No investigation by Purchaser prior to or after the date of this Agreement shall diminish or obviate any of the representations, warranties, covenants or agreements of Seller contained in this Agreement or the Seller Documents.

(b)    Within fifteen (15) days after the end of each fiscal quarter following the date hereof, Seller shall deliver to Purchaser complete and correct copies of the unaudited consolidated balance sheet of Seller as of the end of such fiscal quarter and the related unaudited consolidated statements of income and of cash flows of Seller for the quarterly period then ended, prepared from the books and records of Seller consistent with past practice.  Within fifteen (15) Business Days after the end of each calendar month following the date hereof, Seller shall deliver to Purchaser copies of Seller's unaudited monthly management financial reports, which reports shall be prepared from the books and records of Seller consistent with past practice.

8.2    <u>Conduct of the Business Pending the Closing</u>.

(a)    Prior to the Closing, except as required by applicable Law, as otherwise expressly contemplated hereby or with the prior written consent of Purchaser (which consent shall not be unreasonably withheld, delayed or conditioned), Seller shall conduct the Business only in the Ordinary Course of Business.

(b)    Prior to the Closing, except as set forth on <u>Schedule 8.2(b)</u>, as required by applicable Law, as otherwise expressly contemplated hereby or with the prior written consent of Purchaser (which consent shall not be unreasonably withheld, delayed or conditioned), Seller shall not take any of the following actions, with respect to the Business:

(i)    incur any Indebtedness, including any debtor-in-possession financing;

(ii)    incur any Liability with respect to any Deferred Revenue other than a renewal of an existing Contract in the Ordinary Course of Business which does not involve a material change to the underlying terms of the Contact except the renewal of the performance period thereunder;

(iii)    purchase or sell any material assets;

(iv)    make any capital expenditure or perform any material construction on any Leased Real Property, other than routine maintenance and repairs in the Ordinary Course of Business;

(v)    declare, set aside, make or pay any distribution of any Purchased Assets;

(vi)    make any loan or advance to any Person;

(vii)    (A) increase the annual level of compensation for any Employee, (B) increase the annual level of compensation payable or to become payable by Seller to any of its executive officers, (C) other than in the Ordinary Course of

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

Business or as contemplated by Seller's existing bonus plans, grant any bonus, benefit or other direct or indirect compensation to any employee, director or consultant, (D) other than in the Ordinary Course of Business, increase the coverage or benefits available under any (or create any new) severance pay, termination pay, vacation pay, company awards, salary continuation for disability, sick leave, deferred compensation, bonus or other incentive compensation, insurance, pension or other employee benefit plan or arrangement made to, for or with any of the directors, officers, or employees of Seller or otherwise modify, amend or terminate any such plan or arrangement or (E) enter into any employment, deferred compensation, severance, consulting, non-competition or similar agreement (or amend any such agreement) to which Seller is a party or involving a director, officer or employee of Seller in his or her capacity as a director, officer or employee of Seller, other than renewals of existing employment agreements with any director, officer or employee of Seller;

(viii)    subject any Purchased Asset to any Lien;

(ix)    enter into any merger, consolidation or similar transaction with any Person except as expressly permitted by this Agreement, subject to all relevant covenants and conditions;

(x)    cancel or compromise any debt owed to Seller, or any claim of Seller against any Person, or waive or release any right relating to the Business;

(xi)    enter into any amendment, modification or supplement to the Purchased Contracts or lease, assign, sublease, terminate, fail to make any payment in respect of, or reject the Purchased Contracts;

(xii)    enter into, amend or terminate any Material Contracts or any Intellectual Property License (other than licenses for unmodified commercially available off the shelf software) other than as expressly permitted by clauses (ii) and (iv) above;

(xiii)    take any action of any kind which would impair or reduce the value of the Purchased Assets, with respect to any such Purchased Asset in any material respect;

(xiv)    enter into any transaction not in the Ordinary Course of Business; or

(xv)    enter into any agreement or otherwise agree to do any of the foregoing.

(c)    Without limiting the generality of the foregoing, from the date of this Agreement until the Closing and taking into consideration the Bankruptcy Case and all effects relating thereto and the actions contemplated by this Agreement, Seller shall use reasonable efforts to:

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

(i)     maintain itself as a Delaware corporation, duly organized, validly existing, and in good standing under the laws of the jurisdiction of incorporation of Seller;

(ii)    maintain the Purchased Assets in accordance with good and prudent business practices and in good operating condition and repair, subject only to ordinary wear and tear;

(iii)   conduct its businesses, operations, and affairs consistent with past practice;

(iv)    preserve intact its business organization;

(v)     preserve its current relationships with its employees, consultants, suppliers, licensors, distributors, customers, and licensees, and any other Persons with which it has any material business relationship;

(vi)    continue in full force and effect without material modification all policies or binders of insurance that it currently maintains;

(vii)   maintain the length of the payment cycles for its payables and receivables in accordance its past practices; and

(viii)  exercise, but only after notice to Purchaser and receipt of Purchaser's prior written agreement thereto, all rights of renewal pursuant to the terms of any Purchased Contract that by its terms would otherwise expire.

8.3     <u>Consents</u>.

Seller shall use commercially reasonable efforts to obtain at the earliest practicable date all consents and approvals required to consummate the transactions contemplated hereby, including, the consents and approvals referred to in <u>Section 5.3(b)</u>.

8.4     <u>Publicity</u>.

Seller shall not issue any press release or public announcement concerning this Agreement or the transactions contemplated hereby without obtaining the prior written approval of the Purchaser; provided, however, that Seller shall be permitted to issue a press release announcing this Agreement and the Bankruptcy Case prior to the open of trading on the first trading date after the date hereof, which press release shall be subject to review by Purchaser and which shall incorporate all reasonable comments by Purchaser.

8.5     <u>Use of Name</u>.

Seller hereby agrees that upon the consummation of the transactions contemplated hereby, Purchaser shall have the sole right to the use of the names NexPrise, InfoPrise or WebSpace or similar names or any service marks, trademarks, trade names, identifying symbols, logos, emblems, signs or insignia related thereto or containing or comprising the foregoing,

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

including any name or mark confusingly similar thereto (collectively, the "Purchased Business Name Trademarks"), subject to any contractual or legal restrictions associated therewith, and Seller shall not, and shall not permit any Affiliate to, use such name or any variation or simulation thereof, other than in the case of disclosures by Seller or its Affiliates of their former ownership of the Business.  In furtherance thereof, as promptly as practicable but in no event later than 30 days following the Closing Date, Seller shall remove or otherwise obliterate all Purchased Business Name Trademarks from all materials including, any sales and marketing materials, displays, signs, promotional materials and other materials not transferred to Purchaser hereunder and in its possession.  Within five (5) days following the Closing Date, Seller shall file, and shall cause its Affiliates to file, all documentation necessary to change its corporate names to remove any Purchased Business Name Trademark, including a motion in the Bankruptcy Court to change the caption of the Bankruptcy Case.

      8.6    <u>Permits and Licenses; Consents</u>.

      (a)    Commencing on the date of this Agreement, the parties, cooperating in good faith, shall use commercially reasonable efforts to take such steps, including the filing of any required applications with Governmental Body, as may be necessary to effect the transfer of the Permits to the Purchaser at the Closing or if not possible prior to the Closing as practicable thereafter, to the extent such transfer is permissible under applicable Law, the "Permitting Process").  Any filing or other fees and other out-of-pocket expenses associated with the Permitting Process shall be paid by Seller.

      (b)    With respect to any Purchased Assets which by their respective terms are not assignable without the consent of a third party, the Sale Order shall provide that all such Purchased Assets shall be assumed by Seller and assigned to Purchaser without the necessity of obtaining such consent.  Nothing in this Section 8.6(b) shall in any way diminish Seller's obligations hereunder to use reasonable efforts to obtain consents and approvals and to take all such other actions specified herein prior to or at Closing as are necessary to enable Seller to convey and assign good and valid title to all the Purchased Assets to Purchaser.  Without limiting the generality of the foregoing, in the case of Permits or Contracts include in the Purchased Assets that (i) cannot be transferred or assigned effectively without the consent of third parties, which consent has not been obtained prior to Closing (after giving effect to the Sale Order and the Bankruptcy Code), Seller shall, subject to any approval of the Bankruptcy Court that may be required, use commercially reasonable efforts to cooperate with Purchaser in endeavoring to obtain such consent and, if any such consent is not obtained, Seller shall, following Closing, and subject to any approval of the Bankruptcy Court that may be required, use reasonably best efforts to cooperate with Purchaser to provide to purchaser the benefits thereof in some other manner or (ii) that are otherwise not transferable or assignable (after giving effect to the Sale Order and the Bankruptcy Code), Seller shall, following Closing, and subject to any approval of the Bankruptcy Court that may be required, use commercially reasonable efforts to provide to Purchaser the benefits thereof in some other manner (including the exercise of the rights of Seller thereunder).

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

8.7    <u>Non Competition and Non-Solicitation by Seller</u>.

(a)    <u>Non-Competition</u>.    In consideration of the transactions contemplated hereby and the payment of the Purchase Price and the assumption of the Assumed Liabilities, Seller hereby covenants and agrees that during the period beginning on the date of this Agreement and ending on the fifth anniversary of the Closing Date (the "<u>Restricted Period</u>"), Seller and its Affiliates (including any company or other entity controlled by Seller or its shareholders (whether currently existing or hereafter acquired or formed)) shall not, directly or indirectly, in any capacity, render services, engage or have a financial interest in, any business that shall be competitive with those business activities that have constituted part of the Business or any business related thereto anywhere in the world (the "<u>Restricted Business</u>"), nor shall any of them assist any Person that shall be engaged in any such business activities.    Seller acknowledges that the Business is planned to be conducted globally and agrees that the provisions in this <u>Section 8.7</u> shall operate throughout the world.    Nothing herein shall prohibit Seller from being a passive owner of not more than 2% of the outstanding stock of any class of a corporation which is publicly traded, so long as Seller has no active participation in the business of such corporation.

(b)    <u>Non-Solicitation; Non-Disparagement</u>.    In consideration of the transactions contemplated hereby and the payment of the Purchase Price and the assumption of the Assumed Liabilities, Seller hereby covenants and agrees that during the Restricted Period, neither Seller nor its Affiliates (including any company or other entity controlled by such Seller or its shareholders (whether currently existing or hereafter acquired or formed)) shall directly or indirectly: (i) solicit or induce, or attempt to solicit or induce, any employee who accepts employment with Purchaser to leave the employ of Purchaser or any of its Affiliates for any reason whatsoever; (ii) hire or employ any employee who accepts employment with Purchaser; (iii) without the prior written consent of Purchaser, employ any employee who does not accept employment with Purchaser; (iv) solicit or induce, or attempt to solicit or induce, any customer, supplier, vendor, service provider, employee, licensee, licensor, lessor, franchisee or other business relation of the Business (collectively, "<u>Restricted Parties</u>") to purchase any goods or products with respect to the Restricted Business; (v) otherwise impede or interfere in any way with any Restricted Parties or customer relationship of Purchaser or any of its Affiliates with respect to the Restricted Business; or (vi) disparage Purchaser or its Affiliates in any way; <u>provided</u>, <u>however</u>, that Seller will not be deemed to have violated this paragraph merely as a result of publishing a solicitation of general circulation.

(c)    <u>Remedy for Breach</u>.    Seller acknowledge that its covenants contained in <u>Section 8.7(a)</u> and <u>8.7(b)</u> hereof are of a special, unique, unusual and extraordinary character, which give them peculiar value, the loss of which cannot be reasonably or adequately compensated in an action at law, and that, in the event there is a breach thereof by Seller or any of its Affiliates, Purchaser will suffer irreparable harm, the amount of which will be impossible to ascertain.    Accordingly, Purchaser shall be entitled, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction, either at law or in equity, to obtain damages for any breach or to enforce specific performance of the provisions or to enjoin Seller or any of its Affiliates from committing any act in breach of any covenant contained in <u>Sections 8.7(a)</u> and <u>8.7(b)</u> of this Agreement, in each case without the requirement of posting a bond or proving actual damages.    If Purchaser is obliged to resort to the courts for the enforcement of any of the

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

covenants contained in Sections 8.7(a) and 8.7(b), each such covenant shall be extended for a period of time equal to the period of such breach, if any, which extension shall commence on the later of (i) the date on which the original (unextended) term of such covenant is scheduled to terminate or (ii) the date of the final court order (without further right of appeal) enforcing such covenant.

(d)    Enforcement.  If, at the time of enforcement of this Section 8.7, a court shall hold that the duration, scope or area restrictions stated herein are unreasonable under circumstances then existing, the Parties agree that the maximum duration, scope or area reasonable under such circumstances shall be substituted for the stated duration, scope or area and that the court shall be allowed to revise the restrictions contained herein to cover the maximum period, scope and area permitted by Law.

(e)    Acknowledgment.  Seller expressly acknowledge and agree that (i) each and every of the restrictions contained in this Section 8.7 is reasonable in all respects (including with respect to subject matter, time period and geographical area) and such restrictions are necessary to protect Purchaser's interest in, and value of, the Business and the Purchased Assets (including the goodwill inherent therein), (ii) Seller is primarily responsible for the creation of such value, and (iii) Purchaser would not have entered into this Agreement and consummated the transactions contemplated hereby without the restrictions contained in this Section 8.7.

(f)    No Discouraging Actions.  Seller shall not, directly or indirectly, in any manner take any action which is designed, intended or might reasonably be anticipated to have the effect of discouraging any Restricted Party from maintaining the same business relationships with the Business after the date of this Agreement and/or after the Closing.

8.8    Post-Closing Wind-Up.

As promptly as reasonably practicable after the Closing, Seller shall, at its own cost and expense, take such actions as may be required or advisable (which may involve the formation of a liquidation trust or similar vehicle) to avoid the use of any trade names or other property that is an Purchased Asset (including amending their organization documents to change their names) and to accomplish the liquidation and winding-up of their estates (the "Wind-Up") as expeditiously and as efficiently as reasonably possible.  At the request of Purchaser, Seller shall keep Purchaser apprised of all material developments with respect to the Purchased Assets and Assumed Liabilities in the course of the Wind-Up and will promptly comply with any reasonable requests by Purchaser for information relating thereto.

## ARTICLE IX

## EMPLOYEES AND EMPLOYEE BENEFITS

9.1    Employment.

Prior to the Closing, the Purchaser shall make an offer of employment to those Employees listed on Schedule 9.1 to commence immediately following the Closing.  Any such employment offers will (i) be contingent on the Closing occurring and (ii) be subject to and in compliance with Purchaser's human resources policies and procedures and have terms and

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

responsibilities determined by Purchaser in its sole discretion.  Seller shall assist Purchaser in contacting such Employees to confirm receipt of the offers.  Such individuals who accept such offer by, and commence employment on, the Closing Date are hereinafter referred to as the "Transferred Employees."  Seller shall provide promptly to Purchaser, at Purchaser's request, any information or copies of personnel records (including addresses, dates of birth, dates of hire and dependent information) relating to the Transferred Employees or relating to the service of Transferred Employees with Seller (and predecessors of Seller, as applicable) prior to the Closing Date.  Seller and Purchaser shall each cooperate with the other and shall provide to the other such documentation, information and assistance as is reasonably necessary to effect the provisions of this Section 9.1.

      9.2    Employee Benefits.

      (a)    Claims of the Transferred Employees and their eligible beneficiaries and dependents for medical, dental, prescription drug, life insurance, and/or other welfare benefits ("Welfare Benefits") (other than short-term or long-term disability benefits) that are incurred on or before the Closing Date or are otherwise incurred under the Employee Benefit Plans, shall be the sole responsibility of the Seller.  Seller shall be solely responsible for satisfying the health care continuation requirements of Part 6 of Subtitle B of Title I of ERISA or Code § 4980B for Employees who are not Transferred Employees (whether occurring prior to, on or after the Closing Date) and Transferred Employees (whether occurring on or prior to the Closing Date).

      (b)    Nothing contained in this Article IX or elsewhere in this Agreement shall be construed to prevent the termination of employment by Purchaser of any individual Transferred Employee or any change in the employee benefits available to any individual Transferred Employee following the Closing.

      (c)    Seller shall be responsible for all Liabilities with respect to Employees attributable to their accrued and unused vacation, sick days and personal days, and otherwise for all claims, through the Closing Date.

**ARTICLE X**

**TAXES**

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

10.1 <u>Transfer Taxes</u>.  Seller and Purchaser shall share equally in all instances for all sales, use, stamp, documentary stamp, filing, recording, transfer or similar fees or Taxes or governmental charges (including any interest and penalty thereon) payable in connection with the transactions contemplated hereby ("<u>Transfer Taxes</u>").  Seller and Purchaser shall cooperate to timely prepare and file any tax returns relating to such Transfer Taxes, including any claim for exemption or exclusion from the application or imposition of Transfer Taxes.  Purchaser or Seller, as applicable, shall file all necessary documentation and returns with respect to such return or other filing and a copy of a receipt showing payment of any such Transfer Taxes to the other party hereto.

10.2 <u>Purchase Price Allocation</u>.  Each of Purchaser and Seller shall report the transactions contemplated by this Agreement for Tax purposes in a manner consistent with the allocation set forth on <u>Schedule 10.2</u>.

**ARTICLE XI**

**MISCELLANEOUS**

11.1 <u>No Survival of Representations and Warranties</u>.  The parties hereto agree that the representations, warranties, covenants and agreements contained herein or in any other document delivered pursuant to this Agreement shall not survive the Closing Date, except for covenants and agreements that by their terms are to be satisfied after the Closing Date and as otherwise provided in <u>Section 4.6</u>, which covenants and agreements shall survive until satisfied in accordance with their terms.

11.2 <u>Expenses</u>.  Except as otherwise provided herein, each of Seller and Purchaser shall bear its own expenses incurred in connection with the negotiation and execution hereof and each other agreement, document and instrument contemplated hereby and the consummation of the transactions contemplated hereby and thereby.

11.3 <u>Injunctive Relief</u>.  Damages at law may be an inadequate remedy for the breach of any of the covenants, promises and agreements contained herein, and, accordingly, any party hereto shall be entitled to injunctive relief with respect to any such breach, including specific performance of such covenants, promises or agreements or an order enjoining a party from any threatened, or from the continuation of any actual, breach of the covenants, promises or agreements contained herein.  The rights set forth in this <u>Section 11.3</u> shall be in addition to any other rights which a party may have at law or in equity pursuant to this Agreement.

11.4 <u>Submission to Jurisdiction; Consent to Service of Process</u>.

(a) Without limiting any party's right to appeal any Order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms hereof and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in <u>Section 11.8</u>;

Confidential
*Signed by Judge Louise DeCarl Adler April 07, 2011*

provided, however, that if the Bankruptcy Case has closed, the parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of California sitting in San Diego County and any appellate court from any thereof, for the resolution of any such claim or dispute.  The parties hereby irrevocably waive, to the fullest extent permitted by applicable Law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.  Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(b)    Each of the parties hereto hereby consents to process being served by any party to this Agreement in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 11.8.

11.5    Waiver of Right to Trial by Jury. EACH PARTY TO THIS AGREEMENT WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, MATTER OR PROCEEDING REGARDING THIS AGREEMENT OR ANY PROVISION HEREOF.

11.6    Entire Agreement; Amendments and Waivers.  This Agreement (including the Schedules and Exhibits hereto), the Seller Documents and the Purchaser Documents represent the entire understanding and agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior discussions and agreements between the parties with respect thereto, including the Confidentiality Agreement between Purchaser and Seller, dated September 28, 2010.  This Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by the party against whom enforcement of any such amendment, supplement, modification or waiver is sought.  No action taken pursuant to this Agreement, including any investigation by or on behalf of any party, shall be deemed to constitute a waiver by the party taking such action of compliance with any representation, warranty, covenant or agreement contained herein.  The waiver by any party hereto of a breach of any provision hereof shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach.  No failure on the part of any party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such party preclude any other or further exercise thereof or the exercise of any other right, power or remedy.  All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

11.7    Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and performed in such State, without giving effect to any choice-of-law principles that would require the application of the laws of another jurisdiction, except as may be governed by the Bankruptcy Code.

11.8    Notices.  All notices and other communications hereunder shall be in writing and shall be deemed given (i) when delivered personally by hand (with written confirmation of receipt), (ii) when sent by facsimile (with written confirmation of transmission) or (iii) one Business Day following the day sent by overnight courier (with written confirmation of receipt),

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

in each case at the following addresses and facsimile numbers (or to such other address or facsimile number as a party may have specified by notice given to the other party pursuant to this provision):

If to Seller, to:

    NexPrise, Inc.
    Attn: John Lynch
    5963 La Place Ct, Suite 302
    Carlsbad, CA 92008
    Facsimile: (760) 804-1331

With a copy (which shall not constitute notice) to:

    DLA Piper LLP (US)
    Attn: Eric Wang
    2000 University Ave.
    East Palo Alto, CA 94303
    Facsimile No.: (650) 687-1205

    and

    DLA Piper LLP (US)
    Attn: Kurt Ramlo
    550 South Hope St., Suite 2300
    Los Angeles, CA 90071-2678
    Facsimile No.: (213) 330-7600

If to Purchaser, to:

    Trubiquity, Inc.
    5480 Corporate Drive, Suite 300
    Troy, MI  48098
    Facsimile No.: (248) 601-7177
    Attn: Maureen Huber

With a copy to:

    Kirkland & Ellis LLP
    601 Lexington Avenue
    New York, NY  10022
    Facsimile No.:  (212) 446-6460
    Attn:  Elazar Guttman and Brian S. Lennon

    11.9   <u>Severability</u>.  If any term or other provision hereof is invalid, illegal, or incapable of being enforced by any law or public policy, all other terms or provisions hereof shall nevertheless remain in full force and effect so long as the economic or legal substance of the

**Confidential**
*Signed by Judge Louise DeCarl Adler April 07, 2011*

transactions contemplated hereby is not affected in any manner materially adverse to any party. Upon such determination that any term or other provision is invalid, illegal, or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible.

11.10    <u>Binding Effect; Assignment</u>.  This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.  Nothing herein shall create or be deemed to create any third party beneficiary rights in any Person or entity not a party to this Agreement except as provided below.  No assignment hereof or of any rights or obligations hereunder may be made by either Seller or Purchaser without the prior written consent of the other parties hereto and any attempted assignment without the required consents shall be void, except (a) for assignments and transfers by operation of Law and (b) that Purchaser may assign any or all of its rights, interests and obligations hereunder to a wholly owned subsidiary of Purchaser, <u>provided</u>, <u>however</u>, that any such subsidiary agrees in writing to be bound by all of the terms, conditions and provisions contained herein.  No assignment pursuant to this <u>Section 11.10</u> of any obligations hereunder shall relieve the assigning party of any such obligations.  Upon any such permitted assignment, the references herein to Purchaser shall also apply to any such assignee unless the context otherwise requires.

11.11    <u>Non-Recourse</u>.  No past, present or future director, officer, employee, agent, advisor, incorporator, member, partner or equityholder of Seller shall have any liability for any obligations or liabilities of Seller hereunder or the Seller Documents of or for any claim based on, in respect of, or by reason of, the transactions contemplated hereby and thereby.

11.12    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy hereof and all of which, when taken together, will be deemed to constitute one and the same agreement.

11.13    <u>Releases</u>.

(a)    Effective as of the Closing, Purchaser hereby releases and causes its Affiliates to release Seller, Seller's respective Affiliates, and each of their respective officers, directors, managers and employees (in their capacity as such and for services provided to Seller and their Affiliates), director or indirect equity holders  and non-employee agents and representatives (collectively, the "<u>Seller Released Parties</u>") from any and all Liabilities, actions, rights of action, contracts, indebtedness, obligations, claims, causes of actions, suits, damages, demands, costs, expenses and attorneys' fees whatsoever, of every kind and nature, known or unknown, disclosed or undisclosed, accrued or unaccrued, existing at any time, in all circumstances arising prior to the Closing, that Purchaser or its Affiliates and all such Persons' respective successors and assigns have or may have against any of the Seller Released Parties; provided, that the foregoing shall not release any rights under this Agreement and other agreements contemplated hereby which expressly survive Closing.  Each Seller Released Party that is not a Party shall be considered a third party beneficiary of this Agreement with respect to any rights of indemnity or release provided herein.

Confidential
Signed by Judge Louise DeCarl Adler April 07, 2011

(b)    Effective as of the Closing, Seller hereby releases Purchaser and its Affiliates, equityholders, directors, managers, officers, employees, agents and representatives of Purchaser and its Affiliates (collectively, the "Purchaser Released Parties") from any and all Liabilities, actions, rights of action, contracts, indebtedness, obligations, claims, causes of action, suits, damages, demands, costs, expenses and attorneys' fees whatsoever, of every kind and nature, known or unknown, disclosed or undisclosed, accrued or unaccrued, existing at any time, in all circumstances arising prior to Closing, that any Seller or its respective Affiliates and all such Persons respective successors and assigns, have or may have against any of the Purchaser Released Parties; provided, that the foregoing shall not release any rights under this Agreement and other agreements contemplated hereby which expressly survive Closing.

*[Remainder of page intentionally left blank; signature pages follow]*

Confidential

*Signed by Judge Louise DeCarl Adler April 07, 2011*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized respective officers, as of the date first written above.

**TRUBIQUITY, INC.**

By: _____
    Name: Stephen D Koons
    Title: Chief Executive Officer

**NEXPRISE, INC.**

By: _____
    Name: John Lynch
    Title:  CEO and President

[Signature Page to Asset Purchase Agreement]

**Confidential**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized respective officers, as of the date first written above.

**TRUBIQUITY, INC.**

By:_____
     Name:_____
     Title:_____

**NEXPRISE, INC.**

By:_____
     Name: John Lynch
     Title:   CEO and President

[Signature Page to Asset Purchase Agreement]

**Confidential**
*Signed by Judge Louise DeCarl Adler April 07, 2011*

# EXHIBIT C

# BILL OF SALE

THIS BILL OF SALE (this "Bill of Sale") is entered into on [_____], 2011, by and between NexPrise Inc. ("Seller") and Trubiquity, Inc. ("Purchaser").

Seller and Purchaser are parties to that certain Asset Purchase Agreement, dated as of January __, 2011 (the "Purchase Agreement"), pursuant to which Seller has agreed to sell to Purchaser and Purchaser has agreed to purchase from Seller, for the consideration and upon the terms and conditions set forth in the Purchase Agreement, all of the Purchased Assets.

Seller desires to deliver to Purchaser such instruments of sale, transfer, conveyance, assignment and delivery as are required to vest in Purchaser all of Seller's right, title and interest in, to and under the Purchased Assets.

NOW, THEREFORE, pursuant to the Purchase Agreement and in consideration of the mutual promises contained therein, and for other good and valuable consideration, the receipt and sufficiency of which Seller and Purchaser each acknowledge, the parties hereto agree as follows:

1.  Each capitalized term used but not defined in this Bill of Sale shall have the meaning ascribed to it in the Purchase Agreement.

2.  Effective as of the Closing, Seller hereby sells, transfers, assigns, conveys and delivers to Purchaser all of Seller's right, title and interest in, to and under all of the Purchased Assets, free and clear of all Liens.

3.  Seller hereby covenants that it shall execute, acknowledge, and deliver, or shall cause to be done, executed, acknowledged and delivered, all and every such further acts, deeds, conveyances, transfers, assignments, powers of attorney and assurances as reasonably may be required more effectively to sell, transfer, assign, convey, and deliver to Purchaser any of the Purchased Assets.

4.  Nothing in this Bill of Sale shall be deemed to supersede, enlarge or modify any of the provisions of the Purchase Agreement, all of which survive the execution and delivery of this Bill of Sale as provided and subject to the limitations set forth in the Purchase Agreement.  If any conflict exists between the terms of this Bill of Sale and the terms of the Purchase Agreement, the terms of the Purchase Agreement shall govern and control.

5.  This Bill of Sale may be amended and any provision of this Bill of Sale may be waived; provided, however, that any such amendment or waiver (a) will be binding upon Seller only if such amendment or waiver is set forth in a writing executed by Seller and (b) will be binding upon Purchaser only if such amendment or waiver is set forth in a writing executed by Purchaser.

6.  This Bill of Sale and all of the provisions hereof will be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.  Neither this Bill

of Sale nor any rights hereunder shall be assignable by any party hereto without the prior written consent of each other party.  This Bill of Sale is made for the sole benefit of the parties hereto and their respective successors, executors, heirs, legatees and permitted assigns, as applicable, and nothing contained herein, express or implied, is intended to or shall confer upon any other Person any third-party beneficiary right or any other legal or equitable rights, benefits or remedies of any nature whatsoever under or by reason of this Bill of Sale.

7.   This Bill of Sale shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and performed in such State, without giving effect to any choice-of-law principles that would require the application of the laws of another jurisdiction, except as may be governed by the Bankruptcy Code.

8.   Without limiting any party's right to appeal any Order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms hereof and to decide any claims or disputes which may arise or result from, or be connected with, this Bill of Sale, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 11.8 of the Purchase Agreement; provided, however, that if the Bankruptcy Case has closed, the parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of California sitting in San Diego County and any appellate court from any thereof, for the resolution of any such claim or dispute.  The parties hereby irrevocably waive, to the fullest extent permitted by applicable Law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.  Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Each of the parties hereto hereby consents to process being served by any party to this Bill of Sale in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 11.8 of the Purchase Agreement.

9.   This Bill of Sale shall be effective as of the Closing.

10.   This Bill of Sale may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

**[SIGNATURES APPEAR ON FOLLOWING PAGE]**

2

IN WITNESS WHEREOF, Seller and Purchaser have caused this Bill of Sale to be executed and delivered as of the date first above written.

NEXPRISE INC.

By: _____
      Name:
      Title:


TRUBIQUITY, INC.

By: _____
      Name:
      Title:

3

# EXHIBIT D

## INSTRUMENT OF ASSUMPTION

THIS INSTRUMENT OF ASSUMPTION (this "Agreement") is entered into on [_____], 2011, by and between NexPrise Inc. ("Seller") and Trubiquity, Inc. ("Purchaser").

Seller and Purchaser are parties to that certain Asset Purchase Agreement, dated as of January __, 2011 (the "Purchase Agreement"), pursuant to which Seller has agreed to assign to Purchaser and Purchaser has agreed to assume from Seller, for the consideration and upon the terms and conditions set forth in the Purchase Agreement, the Assumed Liabilities.

Purchaser desires to deliver to Seller such instruments as are required in order to effectuate and evidence the assumption by Purchaser of the Assumed Liabilities.

NOW, THEREFORE, pursuant to the Purchase Agreement and in consideration of the mutual promises contained therein, and for other good and valuable consideration, the receipt and sufficiency of which Seller and Purchaser each acknowledge, the parties hereto agree as follows:

1.      Each capitalized term used but not defined in this Agreement shall have the meaning ascribed to it in the Purchase Agreement.

2.      Upon the terms and subject to the conditions set forth in the Purchase Agreement, Purchaser hereby assumes the Assumed Liabilities; provided, however, that Purchaser assumes no Excluded Liabilities, and the parties hereto agree that all such Excluded Liabilities shall remain the sole responsibility of Seller.

3.      Nothing in this Agreement shall be deemed to supersede, enlarge or modify any of the provisions of the Purchase Agreement, all of which shall survive the execution and delivery of this Agreement as provided in, and subject to the limitations set forth in, the Purchase Agreement.  If any conflict exists between the terms of this Agreement and the terms of the Purchase Agreement, the terms of the Purchase Agreement shall govern and control.

4.      This Agreement may be amended and any provision of this Agreement may be waived; provided, however, that any such amendment or waiver (a) will be binding upon Seller only if such amendment or waiver is set forth in a writing executed by Seller and (b) will be binding upon Purchaser only if such amendment or waiver is set forth in a writing executed by Purchaser.

5.      This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and performed in such State, without giving effect to any choice-of-law principles that would require the application of the laws of another jurisdiction, except as may be governed by the Bankruptcy Code.

6.      Without limiting any party's right to appeal any Order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms hereof and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 11.8 of the Purchase Agreement; provided, however, that if the Bankruptcy Case has closed, the parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of California sitting in San Diego County and any appellate court from any thereof, for the resolution of any such claim or dispute.  The parties hereby irrevocably waive, to the fullest extent permitted by applicable Law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.  Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Each of the parties hereto hereby consents to process being served by any party to this Agreement in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 11.8 of the Purchase Agreement.

7.      This Agreement shall be effective as of the Closing.

8.      This Agreement and all of the provisions hereof will be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.  Neither this Agreement nor any rights hereunder shall be assignable by any party hereto without the prior written consent of each other party.  This Agreement is for the sole benefit of the parties hereto and their respective successors, heirs, legatees and permitted assigns, as applicable, and nothing herein, express or implied, is intended or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

9.      This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.


**[SIGNATURES APPEAR ON FOLLOWING PAGE]**


2

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Instrument of Assumption as of the date first above written.

NEXPRISE INC.

By: _____
    Name:
    Title:

TRUBIQUITY, INC.

By: _____
    Name:
    Title:

**Schedule 2.1(b)**
**Assumed Contracts**

1. Caucho Original Equipment Manufacturer Agreement by and between the Company and Caucho Technology, Inc.

2. Software Development and OEM License Agreement, as amended by the Assignment and First Amendment of Software Development and OEM License Agreement by and between the Company, Hummingbird USA, Inc. and Ventro Corporation

3. Master Services Agreement, by and between NetEnrich, Inc. and the Company, dated September 17, 2009

4. Master Channel Partner Agreement, by and between the Company and Adlib Publishing Systems Inc., dated May 20, 2009

5. Oracle License Agreement, by and between the Company and Oracle Corporation, dated July 26, 2000

6. NetApp FAS2020, by and between the company and NetApp Financial Solutions, dated July 9, 2009

7. NetApp Add'l Disk Drive 1TB, by and between the company and NetApp Financial Solutions, dated October 13, 2010

8. Purchase Agreement for Services, by and between Arrow Enterprise Computing Solutions, Inc. and the Company, dated June 3, 2010

9. Customer License and Services Agreement, dated April 8, 2010, by and between the Company and Ashcroft Group Consulting Services, LLC

10. NexPrise Master Subscription Services Agreement, dated September 24, 2010 by and between the Company and Augusta Westland Inc.

11. Customer License and Services Agreement, dated August 27, 2010, by and between the Company and Johanson Manufacturing, as supplemented by Purchase Order ID PO535922, dated August 30, 2010 and NexPrise Order Form: 20100827-02

12. Order No. TCDO2317 by and between the Company and Textron, Inc.

13. The following contracts between the Company and the Customer listed opposite thereto:

| Name of Contract | Customer Name |
| --- | --- |
| Customer License and Services Agreement, dated June 29, 2009 | Aeroflex Colorado Springs Inc. |

| | |
|---|---|
| P.O. Number N-211698 | |
| Customer License and Services Agreement, dated April 8, 2010<br><br>NexPrise Price Quote: 20100413-01, dated April 13, 2010<br><br>NexPrise Price Quote: 20100331-01, dated March 31, 2010 | Ashcroft Group Consulting Services, LLC |
| NexPrise Master Subscription Services Agreement, dated September 24, 2010<br><br>Order Form #20100423-03, dated August 19, 2010 | Augusta Westland Inc. |
| On-line Subscriber License  Agreement, dated February 1, 2006<br><br>P.O. Number 72291-000, dated January 25, 2010 (NexPrise Price Quote 185120709) | Belcan Engineering (Sikorsky Supplier) |
| On-line Subscriber License  Agreement<br><br>NexPrise Order Form Order No. 20090825-2, dated August 25, 2009 | Bench International |
| NexPrise Master Subscription Services Agreement, dated June 5, 2009<br><br>Purchase Order number 4500019999, dated June 9, 2009 | Borg Warner Inc. |
| On-line Subscriber License Agreement<br><br>NexPrise Price Quote: 212062910R, dated September 1, 2010 | Butler America, LLC (Sikorsky Supplier) |
| NexPrise Master Subscription Services Agreement, August 3, 2003<br><br>PO# 20100805-001, dated August 5, 2010 | The City of Woodbury, Minnesota |
| NexPrise Master Subscription Services Agreement, dated September 1, 2009<br><br>Order Form 20090701-1 dated July 1, 2009 | California State University Channel Islands |

| | |
|---|---|
| POs: 0000007824 dated July 7, 2009 and 0000008626 dated July 12, 2010 | |
| Customer License and Services Agreement, dated July 1, 2004<br><br>Purchase Order Number PUR-13426-0-0 (NexPrise Price Quote 216062910), effective 9/1/2010 | Devon Energy Corporation |
| Purchase Order Number PUR-13765-0-0 (NexPrise Price Quote 239102710), effective 1/1/01 | Devon Energy Corporation |
| Purchase Order Number PUR-13779-0-0 (NexPrise Price Quote 20101108-01), dated November 8, 2010 | Devon Energy Corporation |
| Purchase Order Number PUR-13787-0-0 (NexPrise Price Quote 20101118_02, dated November 22, 2010) | Devon Energy Corporation |
| (same Customer and License Services Agreement as Devon Energy Corporation)<br><br>Purchase Order Number J2E-095044, dated March 23, 2010 | Devon Canada Corporation |
| Online Subscriber License  Agreement, dated March 10, 2009<br><br>PO Number 324806, dated December 8, 2010<br><br>PO Number 317981, dated April 22, 2010 | DRS Technologies (Sikorsky Supplier) |
| PO Number 320283, dated July 12, 2010 | DRS Technologies (Sikorsky Supplier) |
| Purchase Order R3909, dated January 8, 2010, including Purchase Order Terms and Conditions | Entropic Communications |
| Master Terms and Conditions Agreement, dated November 17, 2004<br><br>Purchase Order Number 201-LY-L4G33004, dated February 16, 2010<br><br>Purchase Order Number 201-LY-L4G33418, dated December 14, 2010 | General Electric Company, acting through its GE Transportation Division |

*Signed by Judge Louise DeCarl Adler April 07, 2011*

| | |
|---|---|
| Customer License and Services Agreement, dated January 16, 2009<br><br>PO Number 317228, dated August 9, 2010<br><br>NexPrise Price Quote: 210051010, dated May 12, 2010 | GES Exposition Services, Inc. |
| Online Subscriber License  Agreement<br><br>Purchase Order A000093139, dated December 1, 2009<br><br>Purchase Order 11534, dated January 10, 2011<br><br>PO Number 11909JS | GKN Aerospace Services Structure (Sikorsky Supplier) |
| Purchase Order 11572, dated January 14, 2011 | GKN Aerospace Services Structure |
| Online Subscriber License  Agreement, dated July 1, 2002<br><br>Purchase Order No. M66116, dated December 21, 2009<br><br>Purchase Order No. M66117, dated December 21, 2009 | Hexcel Corporation |
| Software License and Services Agreement, dated June 28, 2004<br><br>Purchase Order Number 146331, dated October 1, 2010 | Integrated Device Technology (IDT) |
| Software License and Services Agreement, dated May 9, 2003<br><br>PO Number T82486B, dated August 19, 2010 | International Rectifier Corporation |
| Customer License and Services Agreement, dated August 27, 2010<br><br>Purchase Order ID PO535922, dated August 30, 2010<br><br>NexPrise Order Form: 20100827-02 | Johanson Manufacturing |
| NexPrise Master Subscription Services Agreement with American Pacific University, dated July 1, 2009 | Kona University (formerly known as American Pacific University) |

| | |
|---|---|
| Order No. 20090603-2, dated July 1, 2009 | |
| Customer License and Services Agreement, dated June 25, 2009 <br><br> PO number 45230891, dated June 15, 2010 <br><br> PO number 45233369, dated July 7, 2010 | Kontron America |
| Online Subscriber License  Agreement, dated May 19, 2006 | MFG Solutions |
| NexPrise Master Subscription and Services Agreement, dated October 27, 2009 <br><br> P.O.# M-2009-1143, dated October 26, 2009 <br><br> Purchase Order PO01390, dated October 25, 2010 | Mustang Technology Group, LLC |
| license agreement | Novo Nordisk |
| NexPrise Order Form No. 20101008-01, dated December 18, 2010 | Novo Nordisk |
| IP Team Software License, dated May 17, 1998 <br><br> PO NO. SR06036340, dated March 5, 2008 | Pratt Whitney Rocketdyne (formerly known as Rocketdyne Propulston and Power, Boeing North American, Inc.) |
| PO NO. SR06036339, dated March 14, 2008 | Pratt Whitney Rocketdyne |
| PO NO 4800037301, dated September 10, 2010 | Pratt Whitney Rocketdyne |
| Software License Agreement, dated December 24, 2002 <br><br> PO number 4500116086, dated September 7, 2010 | Sikorsky Aircraft Corporation |
| PO number 4500120013, dated September 3, 2010 | |
| Purchase Order 4500101843, dated April 5, 2010 <br> Purchase Order 4793295 (PO has not yet been sent to the Company) | Sikorsky Aircraft Corporation |
| Purchase Order 4500101392, dated March 30, 2010 <br> Purchase Order 400130924 (PO has not yet been sent to the Company) | Sikorsky Aircraft Corporation |

*Signed by Judge Louise DeCarl Adler April 07, 2011*

| | |
|---|---|
| On-line Subscriber License Agreement<br><br>Purchase Order Number: 7DLB7, dated October 19, 2010 | Spirit Aerosystems Inc. (Sikorsky Supplier) |
| Software License and Services Agreement, dated October 29, 2004<br><br>PO Number 70045458, dated March 9, 2010 | Subaru of Indiana (SIA) |
| Subaru Improvements Request Statement of Work | Subaru of Indiana (SIA) |
| (The Company cannot find a copy of the Textron license agreement at this time.)<br><br>Order 6.30.09 of the Software License and Services Agreement<br><br>Order No. TCDO2317 | Textron, Inc. |
| (The Company is unable to find a copy of the license agreement with Toray Companies.)<br><br>NexPrise Price Quote: 183120709, dated December 7, 2009<br><br>P/O Number 045410-00, dated January 12, 2011 | Toray Composites |
| Software License and Services Agreement, dated June 27, 2003<br><br>Purchase Order No. 7933, dated April 1, 2010 | TRAM, Inc. |
| Customer License and Services Agreement, dated January 12, 2001<br><br>Purchase Order No Y003483, dated October 30, 2009<br><br>Purchase Order No Y003674, dated November 2, 2010 (NexPrise Price Quote: 235102710) | Trelleborg Automotive |
| Purchase Order No. Y003482, dated October 30, 2009<br><br>Purchase Order No. Y003675, dated November 2, 2010 | Trelleborg Automotive |

| | |
|---|---|
| (NexPrise Price Quote: 24102710) | |
| Software License and Services Agreement, dated August 13, 2008<br><br>PO 1028483 dated October 4, 2010 (Quote 215062910)<br><br>(The Company cannot find a copy of the additional PO for 2010-2011) | The University of Pittsburgh of the Commonwealth System of Higher Education |
| Software License and Services Agreement, dated April 30, 2004<br><br>Purchase Order Number 1013523, dated January 29, 2010 | Zoran Corporation |

*     *     *

*Signed by Judge Louise DeCarl Adler April 07, 2011*

## Schedule 2.1(h)
**Modified in open court on February 24, 2011.**

**Schedule 2.2(c)**
**Rejected Contracts**

1. The Company's stock option agreements, the 1998 Stock Plan and agreements in connection thereto.
2. All agreements providing for employment.
3. All benefit plans and agreements related thereto.
4. Executive Employment Agreement, by and between John Lynn and the Company, dated April 1, 2009
5. Independent Contractor Agreement, by and between Pat Clark and the Company, dated March 4, 2010
6. Sales Representative Agreement, by and between NexPrise Sales LLC and the Company, dated March 1 2010
7. All other agreements providing for the Company's sales representatives
8. Airport Plaza Office Lease (5963 La Place Ct #302 Carlsbad, Ca 92008), by and between  POI-Carlsbad, Inc. and the Company, dated November 30, 2005, as amended July 31, 2009 and all agreements related thereto.
9. Indemnity Agreement, by and between John Lynch  and the Company, dated April 01, 2009
10. Executive Employment Agreement, by and between John Lynch and the Company, dated April 01, 2009
11. Indemnity Agreement, by and between Pat Clark and the Company, dated May 01, 2009
12. Settlement Agreement and General Release, by and among Regina Drysdale, the Ted Drysdale and Regina A. Drysdale Family Trust, and the Company, dated November 23, 2009
13. Confidential Separation Agreement and General Release of Claims, by and between Kendra Drysdale and the Company, dated April 2, 2010
14. NexPrise Note, by and between Sirius Industries LLC and the Company, dated March 28, 2008
15. Timeline Forbearance Agreement  and Convertible Promissory Note, by and between Timeline Ventures and the Company, dated April 1, 2008
16. Timeline Forbearance Agreement and Convertible Promissory Note, by and between Gauthier Groult and the Company, dated April 1, 2008
17. Timeline Forbearance Agreement and Convertible Promissory Note, by and between Latham Watkins and the Company, dated April 1, 2008
18. Timeline Forbearance Agreement and Convertible Promissory Note, by and between David Hahn and the Company, dated April 1, 2008
19. Timeline Forbearance Agreement and Convertible Promissory Note, by and between Scott Wolfe and the Company, dated April 1, 2008
20. Forbearance Agreement and Convertible Promissory Note, by and between Randall Simpson and the Company, dated April 1, 2008
21. Letter regarding amendment to offer letter, by and between Brian Deng and the Company , dated June 8, 2005
22. Letter regarding amendment to offer letter, by and between Gary Clough and the Company, dated June 8, 2005
23. Letter regarding amendment to offer letter, by and between Steve Smith and the Company, datete June 8, 2005

*Signed by Judge Louise DeCarl Adler April 07, 2011*

24. Offer Letter, by and between Ted Lesher and the Company, dated December 11, 2006

25. Offer Letter, by and between Brian Deng, dated March 18,2002

26. Offer Letter, by and between Gary Clough, dated March 18,2002

27. Offer Letter, by and between Steve Smith, dated April 6, 2000

28. Offer Letter, by and between Jamie Greenburg, dated August 21,2006

29. NexPrise, Inc. 6% Convertible Subordinated Notes due 2007 and that certain Indenture dated as of April 1, 2000 by and between State Street Bank and Trust Company of California, N.A., as initial indenture trustee, and Seller, pursuant to which the notes were issued.  U.S. Bank National Association currently serves as successor trustee.

*Signed by Judge Louise DeCarl Adler April 07, 2011*

**<u>Schedule 2.1(g)</u>**

**Rights of Seller under non-disclosure or confidentiality, non-compete or non-solicitation agreements with Transferred Employees or third parties**

Reference is made to the Employee Proprietary Information and Inventions Agreement executed by each of the Transferred Employees.

**Schedule 2.4(a)**
**Excluded Debts**

| Name of Contract | Parties to Contract | Date of Contract |
|---|---|---|
| Timeline Forbearance Agreement and Convertible Promissory Note | Timeline Ventures and the Company | April 1, 2008 |
| Timeline Forbearance Agreement and Convertible Promissory Note | Gauthier Groult and the Company | April 1, 2008 |
| Timeline Forbearance Agreement and Convertible Promissory Note | Latham Watkins and the Company | April 1, 2008 |
| Timeline Forbearance Agreement and Convertible Promissory Note | David Hahn and the Company | April 1, 2008 |
| Timeline Forbearance Agreement and Convertible Promissory Note | Scott Wolfe and the Company | April 1, 2008 |
| Timeline Forbearance Agreement and Convertible Promissory Note | Randall Simpson and the Company | April 1, 2008 |
| NexPrise Note | Sirius Industries LLC and the Company | March 28, 2008 |

NexPrise, Inc. 6% Convertible Subordinated Notes due 2007 and that certain Indenture dated as of April 1, 2000 by and between State Street Bank and Trust Company of California, N.A., as initial indenture trustee, and Seller, pursuant to which the notes were issued.  U.S. Bank National Association currently serves as successor trustee.

*Signed by Judge Louise DeCarl Adler April 07, 2011*

## Schedule 2.5(b)

**Deleted pursuant to letter agreement, dated March 2, 2011, between Trubiquity, Inc. and NexPrise, Inc.**

**<u>Schedule 3.4(e)</u>**
**Required Consents**

None.

**Schedule 8.2(b)**
**Exceptions to Interim Operating Covenants**

None.

WEST\222958398.2
353507-900000

**<u>Schedule 9.1(a)</u>**
**Redacted**

**Schedule 10.2(a)**
**Purchase Price Allocation**

| Category | $ |
|----------|---|
| Receivables | 300,000 |
| PPE | 25,000 |
| Intangibles | 1,645,000 |
| *Total* | *2,000,000* |



5480 Corporate Drive
Suite 300
Troy, MI 48098 USA

tel  248.833.9000
fax  248.833.9001

March 2, 2011

**By E-Mail**

John Lynch
NexPrise, Inc.
5963 LaPlace Court, Suite 302
Carlsbad, CA  92008

Re:  *In re Nexprise, Inc., Case No. 11-00742-lA11*

Dear John:

As you are aware, Trubiquity, Inc. ("Trubiquity") is serving as the stalking horse bidder in the above-referenced matter, pursuant to that certain Asset Purchase Agreement by and between NexPrise, Inc. (the "Debtor") and Trubiquity dated as of January 17, 2011 (the "APA"). I write in furtherance of our discussions regarding the objections filed by the official committee of unsecured creditors and U.S. Bank National Association, as indenture trustee, to the proposed *Order Approving Bidding Procedures And Protections* (the "Bidding Procedures Order") and our proposed resolution of those objections.

In an effort to resolve the objections, Trubiquity has agreed to replace the form of Bidding Procedures Order attached to APA and the *Debtor's Motion For Orders (1) Approving Bidding Procedures And Protections And (2) Approve Sale Transaction*, filed on January 19, 2011 [Docket No. 16] (the "Sale Motion"), with the proposed form of order attached hereto as Exhibit A (the "Revised Bidding Procedures Order").  In addition, Trubiquity has agreed to replace the proposed form of *Order Authorizing (A) The Sale of Substantially All Of The Assets Of The Debtor Free And Clear Of All Claims, Liens, Liabilities, Rights, Interests And Encumbrances; (B) The Debtor To Enter Into And Perform Their Obligations Under The Asset Purchase Agreement; (C) The Debtor To Assume And Assign Certain Executory Contracts And Unexpired Leases; (D) Granting Related Relief* (the "Sale Order") attached to the APA and the Sale Motion with the proposed form of Sale Order attached hereto as Exhibit B.  Trubiquity and the Debtor agree that this letter modifies the APA as set forth in section of Exhibit B entitled "Modifications to APA."

In addition, based on the constructive discussions with the Debtor and the Committee, this letter shall constitute Trubiquity's written agreement to waive the condition precedent to Trubiquity's obligations to perform set forth in section 3.4(k) of the APA to resolve certain objections to the Motion, subject to the Bankruptcy Court's entry of the Revised Bidding Procedures Order.

John Lynch
Page 2

Please confirm your agreement with the arrangements described above by signing below and returning it to me via e-mail in .pdf format at mhuber@trubiquity.com.

Sincerely,

*Maureen Huber*

Maureen Huber

Agreed to and accepted as of this 2nd day of March on behalf of Trubiquity:

By: _____
Printed Name:  Maureen Huber
Title:  Chief Financial Officer and Managing Director of Trubiquity

Agreed to and accepted as of this 1 day of March on behalf of the Debtor:

By: _____
Printed Name:  John Lynch
Title:  President and Chief Executive Officer of NexPrise, Inc.

Cc:    Michael D. Breslauer, counsel to the Official Committee of Unsecured Creditors
       Clark Whitmore, counsel to U.S. Bank National Association

WEST:223263316.3

# EXHIBIT B

**Schedule 2.1(b)**
**Assumed Contracts**

1. Caucho Original Equipment Manufacturer Agreement by and between the Company and Caucho Technology, Inc.

2. Software Development and OEM License Agreement, as amended by the Assignment and First Amendment of Software Development and OEM License Agreement by and between the Company, Hummingbird USA, Inc. and Ventro Corporation

3. Master Services Agreement, by and between NetEnrich, Inc. and the Company, dated September 17, 2009

4. Master Channel Partner Agreement, by and between the Company and Adlib Publishing Systems Inc., dated May 20, 2009

5. Oracle License Agreement, by and between the Company and Oracle Corporation, dated July 26, 2000

6. NetApp FAS2020, by and between the company and NetApp Financial Solutions, dated July 9, 2009

7. NetApp Add'l Disk Drive 1TB, by and between the company and NetApp Financial Solutions, dated October 13, 2010

8. Purchase Agreement for Services, by and between Arrow Enterprise Computing Solutions, Inc. and the Company, dated June 3, 2010

9. Customer License and Services Agreement, dated April 8, 2010, by and between the Company and Ashcroft Group Consulting Services, LLC

10. NexPrise Master Subscription Services Agreement, dated September 24, 2010 by and between the Company and Augusta Westland Inc.

11. Customer License and Services Agreement, dated August 27, 2010, by and between the Company and Johanson Manufacturing, as supplemented by Purchase Order ID PO535922, dated August 30, 2010 and NexPrise Order Form: 20100827-02

12. Order No. TCDO2317 by and between the Company and Textron, Inc.

13. The following contracts between the Company and the Customer listed opposite thereto:

| Name of Contract | Customer Name |
|---|---|
| Customer License and Services Agreement, dated June 29, 2009 | Aeroflex Colorado Springs Inc. |

*Signed by Judge Louise DeCarl Adler April 07, 2011*

| | |
|---|---|
| P.O. Number N-211698 | |
| Customer License and Services Agreement, dated April 8, 2010<br><br>NexPrise Price Quote: 20100413-01, dated April 13, 2010<br><br>NexPrise Price Quote: 20100331-01, dated March 31, 2010 | Ashcroft Group Consulting Services, LLC |
| NexPrise Master Subscription Services Agreement, dated September 24, 2010<br><br>Order Form #20100423-03, dated August 19, 2010 | Augusta Westland Inc. |
| On-line Subscriber License  Agreement, dated February 1, 2006<br><br>P.O. Number 72291-000, dated January 25, 2010 (NexPrise Price Quote 185120709) | Belcan Engineering (Sikorsky Supplier) |
| On-line Subscriber License  Agreement<br><br>NexPrise Order Form Order No. 20090825-2, dated August 25, 2009 | Bench International |
| NexPrise Master Subscription Services Agreement, dated June 5, 2009<br><br>Purchase Order number 4500019999, dated June 9, 2009 | Borg Warner Inc. |
| On-line Subscriber License Agreement<br><br>NexPrise Price Quote: 212062910R, dated September 1, 2010 | Butler America, LLC (Sikorsky Supplier) |
| NexPrise Master Subscription Services Agreement, August 3, 2003<br><br>PO# 20100805-001, dated August 5, 2010 | The City of Woodbury, Minnesota |
| NexPrise Master Subscription Services Agreement, dated September 1, 2009<br><br>Order Form 20090701-1 dated July 1, 2009 | California State University Channel Islands |

*Signed by Judge Louise DeCarl Adler April 07, 2011*

| | |
|---|---|
| POs: 0000007824 dated July 7, 2009 and 0000008626 dated July 12, 2010 | |
| Customer License and Services Agreement, dated July 1, 2004<br><br>Purchase Order Number PUR-13426-0-0 (NexPrise Price Quote 216062910), effective 9/1/2010 | Devon Energy Corporation |
| Purchase Order Number PUR-13765-0-0 (NexPrise Price Quote 239102710), effective 1/1/01 | Devon Energy Corporation |
| Purchase Order Number PUR-13779-0-0 (NexPrise Price Quote 20101108-01), dated November 8, 2010 | Devon Energy Corporation |
| Purchase Order Number PUR-13787-0-0 (NexPrise Price Quote 20101118_02, dated November 22, 2010) | Devon Energy Corporation |
| (same Customer and License Services Agreement as Devon Energy Corporation)<br><br>Purchase Order Number J2E-095044, dated March 23, 2010 | Devon Canada Corporation |
| Online Subscriber License  Agreement, dated March 10, 2009<br><br>PO Number 324806, dated December 8, 2010<br><br>PO Number 317981, dated April 22, 2010 | DRS Technologies (Sikorsky Supplier) |
| PO Number 320283, dated July 12, 2010 | DRS Technologies (Sikorsky Supplier) |
| Purchase Order R3909, dated January 8, 2010, including Purchase Order Terms and Conditions | Entropic Communications |
| Master Terms and Conditions Agreement, dated November 17, 2004<br><br>Purchase Order Number 201-LY-L4G33004, dated February 16, 2010<br><br>Purchase Order Number 201-LY-L4G33418, dated December 14, 2010 | General Electric Company, acting through its GE Transportation Division |

*Signed by Judge Louise DeCarl Adler April 07, 2011*

| | |
|---|---|
| Customer License and Services Agreement, dated January 16, 2009<br><br>PO Number 317228, dated August 9, 2010<br><br>NexPrise Price Quote: 210051010, dated May 12, 2010 | GES Exposition Services, Inc. |
| Online Subscriber License  Agreement<br><br>Purchase Order A000093139, dated December 1, 2009<br><br>Purchase Order 11534, dated January 10, 2011<br><br>PO Number 11909JS | GKN Aerospace Services Structure (Sikorsky Supplier) |
| Purchase Order 11572, dated January 14, 2011 | GKN Aerospace Services Structure |
| Online Subscriber License  Agreement, dated July 1, 2002<br><br>Purchase Order No. M66116, dated December 21, 2009<br><br>Purchase Order No. M66117, dated December 21, 2009 | Hexcel Corporation |
| Software License and Services Agreement, dated June 28, 2004<br><br>Purchase Order Number 146331, dated October 1, 2010 | Integrated Device Technology (IDT) |
| Software License and Services Agreement, dated May 9, 2003<br><br>PO Number T82486B, dated August 19, 2010 | International Rectifier Corporation |
| Customer License and Services Agreement, dated August 27, 2010<br><br>Purchase Order ID PO535922, dated August 30, 2010<br><br>NexPrise Order Form: 20100827-02 | Johanson Manufacturing |
| NexPrise Master Subscription Services Agreement with American Pacific University, dated July 1, 2009 | Kona University (formerly known as American Pacific University) |

| | |
|---|---|
| Order No. 20090603-2, dated July 1, 2009 | |
| Customer License and Services Agreement, dated June 25, 2009<br><br>PO number 45230891, dated June 15, 2010<br><br>PO number 45233369, dated July 7, 2010 | Kontron America |
| Online Subscriber License  Agreement, dated May 19, 2006 | MFG Solutions |
| NexPrise Master Subscription and Services Agreement, dated October 27, 2009<br><br>P.O.# M-2009-1143, dated October 26, 2009<br><br>Purchase Order PO01390, dated October 25, 2010 | Mustang Technology Group, LLC |
| license agreement | Novo Nordisk |
| NexPrise Order Form No. 20101008-01, dated December 18, 2010 | Novo Nordisk |
| IP Team Software License, dated May 17, 1998<br><br>PO NO. SR06036340, dated March 5, 2008 | Pratt Whitney Rocketdyne (formerly known as Rocketdyne Propulston and Power, Boeing North American, Inc.) |
| PO NO. SR06036339, dated March 14, 2008 | Pratt Whitney Rocketdyne |
| PO NO 4800037301, dated September 10, 2010 | Pratt Whitney Rocketdyne |
| Software License Agreement, dated December 24, 2002<br><br>PO number 4500116086, dated September 7, 2010 | Sikorsky Aircraft Corporation |
| PO number 4500120013, dated September 3, 2010 | |
| Purchase Order 4500101843, dated April 5, 2010<br>Purchase Order 4793295 (PO has not yet been sent to the Company) | Sikorsky Aircraft Corporation |
| Purchase Order 4500101392, dated March 30, 2010<br>Purchase Order 400130924 (PO has not yet been sent to the Company) | Sikorsky Aircraft Corporation |

*Signed by Judge Louise DeCarl Adler April 07, 2011*

| | |
|---|---|
| On-line Subscriber License Agreement<br><br>Purchase Order Number: 7DLB7, dated October 19, 2010 | Spirit Aerosystems Inc. (Sikorsky Supplier) |
| Software License and Services Agreement, dated October 29, 2004<br><br>PO Number 70045458, dated March 9, 2010 | Subaru of Indiana (SIA) |
| Subaru Improvements Request Statement of Work | Subaru of Indiana (SIA) |
| (The Company cannot find a copy of the Textron license agreement at this time.)<br><br>Order 6.30.09 of the Software License and Services Agreement<br><br>Order No. TCDO2317 | Textron, Inc. |
| (The Company is unable to find a copy of the license agreement with Toray Companies.)<br><br>NexPrise Price Quote: 183120709, dated December 7, 2009<br><br>P/O Number 045410-00, dated January 12, 2011 | Toray Composites |
| Software License and Services Agreement, dated June 27, 2003<br><br>Purchase Order No. 7933, dated April 1, 2010 | TRAM, Inc. |
| Customer License and Services Agreement, dated January 12, 2001<br><br>Purchase Order No Y003483, dated October 30, 2009<br><br>Purchase Order No Y003674, dated November 2, 2010 (NexPrise Price Quote: 235102710) | Trelleborg Automotive |
| Purchase Order No. Y003482, dated October 30, 2009<br><br>Purchase Order No. Y003675, dated November 2, 2010 | Trelleborg Automotive |

*Signed by Judge Louise DeCarl Adler April 07, 2011*

| | |
|---|---|
| (NexPrise Price Quote: 24102710) | |
| Software License and Services Agreement, dated August 13, 2008<br><br>PO 1028483 dated October 4, 2010 (Quote 215062910)<br><br>(The Company cannot find a copy of the additional PO for 2010-2011) | The University of Pittsburgh of the Commonwealth System of Higher Education |
| Software License and Services Agreement, dated April 30, 2004<br><br>Purchase Order Number 1013523, dated January 29, 2010 | Zoran Corporation |

*      *      *

*Signed by Judge Louise DeCarl Adler April 07, 2011*